[Cite as *In re Adoption of C.L.B.*, 191 Ohio App.3d 64, 2010-Ohio-5190.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY

IN RE ADOPTION OF C.L.B.;                     CASE NO.  9-10-29

BEN C., APPELLANT.                               O P I N I O N

Appeal from Marion County Common Pleas Court
Probate Division
Trial Court No. 09 ADP 52026

Judgment Reversed and Cause Remanded

Date of Decision:   October 25, 2010

APPEARANCES:

      **Ted I. Coulter, for appellant.**

      **Thomas A. Mathews, for appellee Steven B.**

WILLAMOWSKI, Presiding Judge.

{¶ 1}   Appellant Ben C. ("Ben") brings this appeal from the judgment of

the Court of Common Pleas of Marion County, Probate Division, determining that

his consent was not necessary for the adoption of his son, C.L.B., by his stepfather, Steven B. ("Steven"). For the reasons set forth below, the judgment is reversed.

{¶ 2} C.L.B. was born to Ben and Jessica B. ("Jessica") on January 19. The two divorced on December 4, 2002, and a shared-parenting plan was implemented. Minimal support in the amount of $23.26 per month was ordered. Jessica subsequently married Steven on October 16, 2004. On August 19, 2008, Ben was sentenced to a four-year prison term and was incarcerated. Steven filed a petition to adopt C.L.B. on October 6, 2009. The petition alleged that Ben had "failed without justifiable cause to communicate with the minor for a period of one year immediately preceding the filing of the adoption petition * * * [or] failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition * * *." Based upon these failures, the petition alleged that Ben's consent was not necessary.

{¶ 3} On March 3, 2010, a hearing was held on the petition. Leslie Millington, a case worker with the Child Support Enforcement Agency ("CSEA"), testified that Ben had not paid child support from October 5, 2008, to October 6, 2009. Millington also testified that the last payment was received on June 18, 2008. When questioned, she testified that she was not aware of any

communications between Ben and CSEA to establish a withholding from his prison account. Millington found no communication from either parent in the portion of the file she had in court with her. However, she also testified that she did not have a full file and that the requests could be in the remainder of the file.

{¶ 4} Jessica testified that she had not received any support from Ben. She also testified that Ben had no contact whatsoever with C.L.B., that there were no gifts, letters, calls, or visits. She did admit that she had moved during the time in question. When questioned about a visit between Ben and C.L.B. in December 2008, Jessica denied that it had occurred and testified that she would not have allowed C.L.B. to visit Ben. She continued to deny the visit even when shown a picture of the visit and a permission slip signed by her and given to Ben's mother so that she could take C.L.B. into the prison. She claimed that she had contacted CSEA to advise them that Ben was in prison and to take money from his prison account. She stated that she had not received any acknowledgment of her request from them.

{¶ 5} Ben testified that he earned $18 per month in prison. From that money, he is required to pay his fines, hygiene products, and snack foods. He testified that he had twice contacted CSEA to have them take money from his prison account for child support. The first letter was sent on January 12, 2009, and the second was sent on July 23, 2009. He received no reply until February 5,

2010, when the Ohio Department of Rehabilitation and Correction sent him a copy of a letter showing that child support was being withheld. Ben testified that he is not able to write a check for his support as that is against the prison policy.

{¶ 6} As for contact, Ben testified that his parents brought C.L.B. to see him on December 6, 2008, for the Wings Ministry Christmas Party. In order for C.L.B. to attend, Jessica had to sign an authorization slip permitting him to enter the facility. Ben also presented a photo of himself, wearing his prison uniform, his parents, and C.L.B. that was printed on December 20, 2008. Ben identified the photo as being taken at the party. Ben testified that he mails a letter or card to C.L.B. every two weeks. He also mailed him a shirt for his birthday on January 19, 2009. None of these items were returned to him, so he assumed that they were received. He paid for the postage and purchased the envelopes from the prison commissary out of the $18 a month he earns. Ben did indicate that sending letters to C.L.B. was difficult due to Jessica's numerous changes of address. Ben was unable to call C.L.B. because he does not have a phone number.

{¶ 7} Leslie C., Ben's mother, testified that she and her husband took C.L.B. to visit Ben at the prison. She stated that she met Jessica to have her sign the authorization and that Jessica signed it. She also testified that she had the picture taken on December 6, 2008, and had it developed on December 20, 2008. She testified that Ben gave her a letter to send to C.L.B., but she did not have an

address for C.L.B. at the time to send it to him. She would have taken the letter to Jessica at her place of employment, but Jessica has had her banned from the location. At the party, Ben had a shirt made for C.L.B. and sent it to him.

{¶ 8} The remainder of the hearing dealt with whether the adoption should be granted, not whether consent was required. The trial court then took the matter under advisement. On March 17, 2010, the trial court entered judgment finding that Ben's consent was not necessary because of lack of support and de minimis contact. The trial court then granted the adoption. Ben appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

The trial court erred by failing to recognize the incarceration of [Ben] as justifiable cause for [Ben] to not communicate or to pay support for a period of one year before the filing of the adoption petition.

### Second Assignment of Error

The trial court's determination that [Steven] proved by clear and convincing evidence that [Ben] failed to pay child support or to communicate with the minor child for one year before the filing of the adoption petition without justifiable cause is against the manifest weight of the evidence.

{¶ 9} Parents have a fundamental right to the care and custody of their children. *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. "The fundamental liberty interest of natural parents in the care, custody and management of their child[ren]" is not easily extinguished. Id. at 753. Since

adoption terminates this fundamental right, it generally is not permissible absent the written consent of both parents. *In re Adoption of R.M.Z.*, 2d Dist. No. 23511, 2009-Ohio-5627.

> Pursuant to R.C. 3107.07(A), a parent's consent to adoption is not required when that parent "has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." Because R.C. 3107.07(A) is written in the disjunctive, *either* failure to communicate *or* failure to support during the one-year time period is sufficient to obviate the need for a parent's consent. *In re Adoption of Ford*, 166 Ohio App.3d 161, 849 N.E.2d 330, 2006-Ohio-1889, at ¶4, citing *In re Adoption of McDermitt* (1980), 63 Ohio St.2d 301, 304, 408 N.E.2d 680.

> The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the biological parent failed to support or to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of support or communication. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 481 N.E.2d 613, paragraph four of the syllabus; *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 166, 492 N.E.2d 140. To prove facts by clear and convincing evidence requires that the proof " ' * * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Holcomb*, supra, at 368, 481 N.E.2d 613, citing *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.

> Once the petitioner has established, by clear and convincing evidence that the biological parent has failed to communicate with or to support the child for the one-year period, the burden of going forward with evidence shifts to the biological parent to show some facially justifiable cause for the failure. *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, paragraph two of the syllabus. The burden of proof, however, remains at all times with

> the petitioner, who must establish the lack of justifiable cause by clear and convincing evidence. Id.

Id. at ¶9-11. "Any exception to the requirement of parental consent to an adoption must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Adoption of Schoeppner* (1976), 46 Ohio St.2d 21, 24, 345 N.E.2d 608.

{¶ 10} In both assignments of error, Ben alleges that the trial court erred by failing to recognize his incarceration as a justifiable reason for his failure to provide support or have more than de minimis contact with C.L.B.. Ben claims that the finding that his consent was not necessary was against the manifest weight of the evidence. "The fact of incarceration in a penal institution does not constitute a willful failure to properly support and maintain a child, within the meaning of R.C. 3107.06(B)(4), so as to vitiate the requirement of consent by both natural parents prior to the entry of a decree of adoption." Id. at paragraph one of the syllabus. R.C. 3107.06 does not specify that imprisonment is an exception to the consent requirement. Id. at 24. Although the act that resulted in the imprisonment was voluntary and thus results in a voluntary reduction in income that need not result in a reduction of child support, imprisonment, in and of itself, is not a voluntary lack of support.

{¶ 11} In this case, there is no question that Jessica did not receive financial support in the one year prior to the petition. The question is whether there was a

justifiable reason for the failure to support. Ben is not required to prove that he has a justifiable reason, only to present a facially justifiable claim. Steven, as petitioner, has the burden of proof that there is no justifiable claim. The trial court held that Ben did not prove that he had made attempts to support C.L.B. because he had no documentation of his attempts and "CSEA has no records of those communications." However, this finding is not supported by the record. Ben testified that he had submitted two requests to CSEA within the time frame in question to have money withheld from his prison account for child support. He testified that he sent the requests via U.S. mail and they were not returned to him. He also testified that he does not have access, per prison policy, to the account to send payment himself. Jessica testified that she also requested that CSEA withhold money from Ben's prison account for child support. Millington testified that although she did not have any record of the communications alleged by both Jessica and Ben, she did not have the full file with her in court. She testified that the communications could be in those files. Thus, she did not testify that they were not sent, were not received, or did not exist. Her testimony only confirms that she, personally, was unaware of the communications. Some communication must have been received from some source by CSEA because it did eventually start withholding money from the prison account.[1] Without evidence to contradict

_____

[1] The trial court attributed this to communication from Leslie after the petition was filed, but there was no testimony to support this conclusion. The record indicates that Ben, Jessica, and Leslie all contacted CSEA

the evidence that Ben attempted to provide support for C.L.B.,[2] by contacting CSEA to have it withhold funds, the only evidence is that he did so.[3] The burden of proving that Ben did not do so is on the petitioner, not Ben. This burden was not met. Thus, the trial court erred in finding to the contrary.

{¶ 12} The second question is whether Ben had more than de minimis contact or a justifiable cause for any lack of contact within the prior year. Jessica testified that there was none and refused to admit that she was wrong even when presented with direct evidence to the contrary. She testified that she would not have allowed C.L.B. to attend a visit at the prison, even though the permission slip authorizing the visit had her signature and was notarized. She also denied that the visit occurred after a photo showing C.L.B. with Ben and his grandparents was entered into evidence.[4] She also testified that she had moved without giving a forwarding address. Ben testified that he had sent letters and cards every two weeks, though some may have gone to an old address. He also testified that he saw C.L.B. once during the time frame. He was unable to phone C.L.B. because

---

to have the money withheld, though the record brought by Millington does not have any of the communication in it.

[2] The petitioner argues that Ben could have provided support for C.L.B. by having his parents pay his obligation. This court notes that there is no requirement under the law for a grandparent to pay child support on behalf of the parent. Leslie testified that she was not financially able to do so and was only able to pay a minimal amount after the petition by taking out a loan.

[3] There is no requirement that such requests be sent by certified mail. Ben testified that he had sent the requests via U.S. mail. If an item is not returned to the sender, the presumption is that it was delivered. Here, testimony was presented that it was sent. No testimony was presented that it was not received, only that Millingford had no knowledge of any communications.

[4] To believe her testimony concerning the visit in light of all the contradictory documentary evidence would be unreasonable.

he did not have a current phone number. Leslie testified that she took C.L.B., with Jessica's permission, to visit Ben. She testified that she was unable to mail a letter that Ben had given her for C.L.B. because she did not have the current address. Despite Jessica's testimony that no letters, gifts, or phone calls were received and no visit occurred, her testimony is less than credible. By her own testimony, she never provided a forwarding address and would not have allowed visits. She did not deny that Ben did not have her phone number. The trial court found that there was contact, though it was de minimis. Given the lack of cooperation by Jessica, as indicated by her attitude towards the visit, there was a facially justifiable reason for any further lack of communication. The petitioner failed to prove by clear and convincing evidence that the limited contact between C.L.B. was not justifiable given the limitations in ability Ben had. Since the petitioner failed to prove by clear and convincing evidence that there was no support or no more than de minimis contact each without a justifiable reason for the failure, within the one-year time frame immediately preceding the filing of the adoption petition, the trial court erred in determining that Ben's consent was not necessary. Thus, the first and second assignments of error are sustained.

{¶ 13} The judgment of the Court of Common Pleas of Marion County, Probate Division, is reversed, and the matter is remanded for further proceedings.

Judgment reversed
and cause remanded.

PRESTON, J., concurs.

SHAW, J., concurs in judgment only.