[Cite as *In re Adoption of A.C.M.C.*, 2019-Ohio-879.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

### IN THE MATTER OF THE ADOPTION OF

### A.C.M.C.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 BE 0043**

---

Civil Appeal from the
Court of Common Pleas, Probate Division of Belmont County, Ohio
Case No. 18 AD 0005

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Joseph Vavra*, Vavra Law Firm, 132 West Main Street, P.O. Box 430, St. Clairsville, Ohio 43950, for Appellant, and

*Atty. Grace Hoffman*, Lancione, Lloyd, and Hoffman, 3800 Jefferson Street, Bellaire, Ohio 43906, for Appellee.

Dated:
March 13, 2019

**Donofrio, J.**

{¶1}   Appellant, E.G., appeals from a Belmont County Probate Court judgment granting appellee's, R.C.'s, petition to adopt appellant's minor daughter.

{¶2}   Appellant and C.M.C. (mother) were married on December 27, 2008. While mother was eight months pregnant with A.C.M.C., appellant was convicted of multiple offenses involving the sexual abuse of mother's other daughter (appellant's step-daughter at the time).   Appellant was sentenced to four-to-eight years in prison in Pennsylvania. A.C.M.C. was born in June 2010.  Appellant was already in prison when she was born.  He has never met her.  Mother's and appellant's divorce was finalized on May 9, 2011.  The divorce decree suspended any visitation between appellant and A.C.M.C.  It provided that appellant would have to petition the court for visitation.

{¶3}   Mother and appellee began a relationship when A.C.M.C. was approximately one-and-a-half years old.   On September 21, 2013, mother married appellee.  Appellee has been the only father A.C.M.C. has known.

{¶4}   On March 13, 2018, appellee filed a petition to adopt A.C.M.C.   In the petition, appellee alleged that appellant had failed without justifiable cause to provide more than de minimis contact with the child for a period of at least one year immediately preceding the filing of the petition.  Mother filed her consent for the adoption.

{¶5}   Appellant did not consent to the adoption.  Therefore, the probate court set the matter for hearing.  Appellant was released from prison on May 16, 2018.  He attended the hearing, which was held on June 8, 2018.

{¶6}   The court heard testimony from mother, appellee, appellant, appellant's step-grandfather, and the mother of appellant's other child.  Appellant stipulated that he did not have contact with A.C.M.C. for the year preceding the filing of the adoption petition but argued that he had justifiable cause for his lack of contact.  The court determined that appellant failed to demonstrate justifiable cause.  It noted that appellant never petitioned the court for any type of contact with A.C.M.C.; never made an effort to contact mother by using the address or phone number listed in their divorce decree; never sent a letter,

Case No. 18 BE 0043

birthday card, or gift to A.C.M.C.; and never attempted any other type of contact. The court acknowledged that appellant was in prison until May 2018, but found this fact, in and of itself, did not constitute justifiable cause for his failure to have any contact with his child. Therefore, the court found that appellant's consent to the adoption was not necessary and set the matter for further proceedings.

{¶7} Appellant filed a timely notice of appeal on August 16, 2018. On appellant's motion, the probate court stayed its proceedings pending this appeal.

{¶8} Appellant now raises a single assignment of error stating:

> THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CONSENT TO THE ADOPTION WAS NOT REQUIRED AS HE DID DEMONSTRATE JUSTIFIABLE CAUSE AS TO WHY HE DID NOT HAVE CONTACT WITH THE MINOR CHILD.

{¶9} Appellant argues that appellee did not prove appellant failed without justifiable cause to communicate with A.C.M.C. for the one-year period preceding the filing of the petition. He points out that he was in prison during that time. He asserts mother moved multiple times without informing him of her most recent address. Appellant claims mother cut off all contact between A.C.M.C. and her paternal relatives. And appellant claims he was unable to call mother due to prison rules that prohibited him from contacting the victim of the crime for which he was incarcerated. He notes that the victim of his crime was his step-daughter, who resided with mother. Thus, appellant argues he had no means of contacting A.C.M.C.

{¶10} Pursuant to R.C. 3107.07(A), consent to adoption is not required from:

> A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶11}   According to the statute, either a lack of contact or a lack of support for at least one year without justifiable cause can relieve the petitioner from having to obtain the parent's consent.

{¶12}   An adoption case such as this involves the termination of fundamental parental rights.  Therefore, a heightened burden of proof applies.

{¶13}   The question of whether justifiable cause exists in a particular case is a factual determination for the probate court that an appellate court will not disturb unless such determination is unsupported by clear and convincing evidence.  *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613, 615 (1985).  Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved.  *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).  When a party must prove a claim by clear and convincing evidence, a reviewing court must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.  *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶14}  We must determine whether the probate court's finding of no justifiable cause was supported by clear and convincing evidence.  As mentioned above, appellant stipulated to the fact that he had no contact with A.C.M.C. for the year preceding the filing of the adoption petition.  (Tr. 3).

{¶15}  Mother testified first.  She testified that appellant has never made contact with A.C.M.C.  (Tr. 5).  Since her birth, appellant never sent her a card, letter, or anything else.  (Tr. 13).  She stated that when A.C.M.C. was first born, appellant's mother and sisters did have contact with her.  (Tr. 6).  But eventually, she stated, they stopped asking to visit.  (Tr. 10).

{¶16}  Mother's and appellant's divorce decree was entered as an exhibit.  (Ex. 1).  Per the terms of the divorce decree, appellant would have to petition the court for any type of visitation.  (Tr. 6; Ex. 1).  Mother testified that appellant never did so.  (Tr. 6-7).  She also testified that because appellant raped her oldest daughter, she did not want any of her children to ever have to deal with appellant.  (Tr. 8).

{¶17}  Mother testified that she has resided at her current address for six years.  (Tr. 8).  She stated she did not inform appellant of this address.  (Tr. 8).  Before that time,

she resided with her mother.  (Tr. 8).  Appellant was aware of that address because it was in their divorce papers.  (Tr. 8).  Mother further testified that appellant could have sent a card or gifts to A.C.M.C. to her mother's (the maternal grandmother's) house because she visits frequently and forwards any mail to her.  (Tr. 11).  Mother also stated that appellant's grandmother frequents her mother's place of employment.  (Tr. 12).  So she could have obtained mother's address.  (Tr. 12).  Mother stated her current phone number was also listed in the divorce decree.  (Tr. 9).

{¶18} Mother testified that appellant never asked her to have contact with A.C.M.C.  (Tr. 11).  She stated that had he done so, she would have told him to petition the court.  (Tr. 11).

{¶19} Appellee was the next witness.  He testified that A.C.M.C. has been in his life since she was one-and-a-half years old.  (Tr. 14).  He stated that since that time, appellant has never attempted any contact with A.C.M.C. that he was aware of.  (Tr. 14-15).

{¶20} Kristy M., the mother of appellant's other child (T.M.), testified next.  She testified that appellant was incarcerated for most of her child's life too.  (Tr. 18).  Recently, upon his release from prison, Kristy stated that appellant has had visitation and telephone contact with T.M.  (Tr. 18).  Kristy testified that during the years appellant was incarcerated, appellant still had contact with T.M.  (Tr. 18).  She stated that he called every week and on holidays and birthdays.  (Tr. 18).  Kristy stated appellant also sent letters, drawings, birthday cards, and Christmas cards.  (Tr. 18-19).  She testified appellant had both her address and her telephone number.  (Tr. 19).

{¶21} Donald D., appellant's step-grandfather, was the next witness.  He stated that appellant now resides with him and appellant's grandmother.  (Tr. 23).  Donald testified that he and his wife used to visit with A.C.M.C. when she was approximately a year old.  (Tr. 24-25).  But they had not visited with her in the last five to six years.  (Tr. 25).  Donald testified that his family had the maternal grandmother's address.  (Tr. 27).  He stated that she (the maternal grandmother) works at a store that they frequent.  (Tr. 27).  Nonetheless, Donald testified that he never tried to contact mother or bring any gifts for A.C.M.C. through the maternal grandmother.  (Tr. 28).

{¶22} Appellant was the final witness. Appellant admitted that he was incarcerated before A.C.M.C. was born after he was convicted of "charges of a sexual nature" against his step-daughter. (Tr. 30). He further admitted he has never met A.C.M.C. (Tr. 34).

{¶23} Appellant testified that during his time in prison, he maintained contact with his other child T.M. (Tr. 30). He stated that initially, his mother or sister contacted T.M.'s mother and she approved him calling T.M. once or twice a week. (Tr. 30). Appellant testified that he also wrote letters to T.M. and sent her holiday cards and pictures. (Tr. 31). He stated that he kept in contact with T.M. because Kristy allowed him to. (Tr. 31).

{¶24} As to A.C.M.C., appellant stated that he never filed for any kind of visitation rights because he was incarcerated until May 2018. (Tr. 32). He stated he was awaiting the result of this case before filing for visitation. (Tr. 33).

{¶25} Appellant testified that mother has never contacted him regarding A.C.M.C. (Tr. 34). He claimed he has not known mother's address since the day he was arrested. (Tr. 34). He denied knowing that she was living with her mother for some time. (Tr. 35). Appellant also denied knowing mother's telephone number. (Tr. 35). He stated that he tried to have his sisters contact mother to ask for her phone number or address. (Tr. 36).

{¶26} Additionally, appellant testified that it was the Pennsylvania Department of Corrections' policy that he could not have contact with his victim. (Tr. 36; Exs. B, C). He claimed this prevented him from calling A.C.M.C. because his victim (A.C.M.C.'s half-sister) resides with A.C.M.C. and he did not want to risk her answering the telephone. (Tr. 36). Mother, however, testified that she has joint custody of A.C.M.C.'s sister with the girl's father so she only resides with mother half of each week. (Tr. 11).

{¶27} On cross examination, appellant stated he did not recall whether he received a copy of his divorce decree. (Tr. 42). He stated he was unaware that mother's address and telephone number were listed in the divorce decree. (Tr. 42-43). Appellant admitted that his parents and grandparents knew where the maternal grandmother worked. (Tr. 42). Nonetheless, he stated that he never attempted to send a gift or letter to A.C.M.C. through his or mother's family members. (Tr. 43). He claimed he was unsure if the maternal grandmother would pass it on, so he never tried. (Tr. 43). Appellant

claimed that if he had mother's address or telephone number he would have attempted to contact A.C.M.C. (Tr. 43).

**{¶28}** The evidence clearly and convincingly supports the trial court's finding of no justifiable cause for appellant's lack of contact.

**{¶29}** Appellant has had absolutely no contact whatsoever with A.C.M.C. He has been in prison almost her entire life. He has never petitioned the domestic relations court, pursuant to the divorce decree, to have contact with A.C.M.C. The fact that he was in prison did not prevent appellant from having contact with his other child. Appellant maintained contact with his other child through weekly phone calls and by sending cards, letters, and gifts. Thus, the fact that he was in prison will not be construed as justifiable cause for no contact.

**{¶30}** Moreover, appellant claims he did not know mother's phone number or address. But mother testified that her phone number has never changed and is listed in their divorce decree. Appellant also claimed he did not call because he did not want to risk contacting the victim of his crime. Mother, however, testified that A.C.M.C.'s sister only resides with her for half of each week. Thus, appellant would have had many opportunities to call A.C.M.C. had he attempted to do so. Additionally, mother's address in the divorce decree is that of the maternal grandmother, which also has not changed. Yet appellant testified that he never attempted to send a card or gift to A.C.M.C. through her grandmother.

**{¶31}** Appellant asserts this case in analogous to *In re Adoption of C.L.B.*, 191 Ohio App.3d 64, 2010-Ohio-5190, 944 N.E.2d 1190 (3d Dist.). In *C.L.B*, the mother and father divorced and a shared parenting plan was implemented for their son. The mother remarried. Approximately six years after the divorce, the father was sentenced to a four-year prison term. Approximately 14 months after the father was sentenced to prison, the step-father filed a petition to adopt the child. The petition alleged the father's consent was not necessary because he failed without justifiable cause to communicate with the child for a period of one year immediately preceding the filing of the adoption petition and he failed without justifiable cause to provide for the child's maintenance and support for a period of at least one year immediately preceding the filing of the adoption petition.

Case No. 18 BE 0043

{¶32} The court held a hearing on the issue of consent. The mother testified that the father had had no contact whatsoever with the child during the year leading up to the petition. She denied that she had permitted the child to visit the father in prison despite the fact that she signed a notarized permission slip and was shown a photograph of the child with the father in the prison. She also admitted that she moved and did not provide the father with her address. The father testified that his parents (the paternal grandparents) brought the child to see him for a Christmas party during the year preceding the filing of the petition. In order for the child to attend, the mother had to sign a permission slip. The father also presented a photograph of him in his prison uniform, his parents, and the child at the party. The father further testified that he mails a letter or a card to the child every two weeks and uses the money he earns in prison to purchase postage and envelopes from the prison commissary. He also mailed him a shirt from the party. Because no letters were returned to him, he assumed the child received them. He stated he was unable to call the child because he did not have a current phone number. The grandmother corroborated the father's testimony regarding the Christmas party. And she testified that she was the one who brought the permission slip to the mother to sign.

{¶33} The trial court found the father's consent was not required due lack of contact and lack of support. The father appealed.

{¶34} On appeal, the Third District noted that the trial court found that there was de minimis contact. *Id.* at ¶ 12. It found that given the lack of cooperation by the mother, as indicated by her attitude towards the visit, there was a facially justifiable reason for any further lack of communication. *Id.* Thus, it concluded that the step-father failed to prove by clear and convincing evidence that the limited contact between the father and the child was not justifiable given the limitations in ability the father had. *Id.*

{¶35} This case is easily distinguishable from *C.L.B.* Although the appellant in each case had been in prison leading up to the petitions for adoption, the similarity ends there. In *C.L.B.*, the appellant actively sought to maintain contact with his child. He regularly sent gifts and letters and even arranged for his child to visit him in prison. In this case, however, appellant took no action at all to contact A.C.M.C. The evidence here is clear and convincing that appellant had no justifiable cause for his lack of contact with A.C.M.C. in the year preceding the adoption petition.

Case No. 18 BE 0043

{¶36} Accordingly, appellant's sole assignment of error is without merit and is overruled.

{¶37} For the reasons stated above, the trial court's judgment is hereby affirmed.


Waite, P. J., concurs.

Robb, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**