[Cite as *In re Adoption of N.I.B.*, 2019-Ohio-4412.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: N.I.B. | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO.  2019-A-0050** |
| | : | |
| | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Probate Division, Case No. 2018 AD 0018.

Judgment: Affirm.

*David J. Sternberg*, Sternberg & Zeid Co., L.P.A., 7547 Mentor Avenue, #301, Mentor, OH 44060 (For Appellant, Daniel Bosna).

*Jon D. Axelrod*, Axelrod Law Offices, 7976 Tyler Boulevard, Mentor, OH 44060 (For Appellee, Scott Burt).

MARY JANE TRAPP, J.

{¶1}   Appellant, Daniel Bosna ("Mr. Bosna"), appeals from the judgment of the Ashtabula County Court of Common Pleas, Probate Division, finding that his consent to the adoption of his child was not required.  The trial court found that while Mr. Bosna had provided child support during the year preceding the filing of the adoption petition, there was no justifiable cause for Mr. Bosna's failure to have any contact with his son for at least one year before the adoption petition was filed.

{¶2}   After our careful review of the evidence, we find that the trial court's findings were supported by the weight of the evidence and by clear and convincing evidence that

Mr. Bosna's failure to contact was without justifiable cause. There was no question that Mr. Bosna did not have any contact with his son after 2015. While the evidence demonstrated the child's mother failed to respond to his emails sent via the prison system and failed to provide her new phone number and address when she and the child moved during the summer of 2016, there was also no question that despite having actual knowledge of mother's address for six months before the filing of the petition, Mr. Bosna failed to contact or attempt to contact his son. Mr. Bosna failed to present a facially justifiable cause for this failure to communicate. Thus, we must affirm the decision of the court below.

### Substantive and Procedural Facts

{¶3} Mr. Bosna is the biological father of N.I.B., born February 22, 2010. N.I.B.'s biological mother is Samantha Burt ("Mrs. Burt").

{¶4} On April 17, 2018, appellee, Scott Burt ("Mr. Burt"), Samantha Burt's husband and N.I.B.'s stepfather, filed a petition for adoption of N.I.B. The petition alleged that Mr. Bosna's consent to adoption was not required since he had failed to have more than de minimis contact with the child over the past year and did not pay support during that time. Samantha Burt filed a Consent to Adoption on the same date.

{¶5} Mr. Bosna filed objections to petition for adoption, and an evidentiary hearing was held. Pursuant to the App.R. 9(C), "Reconciled Statement of the Evidence,"[1] the following testimony was presented:

{¶6} Mrs. Burt testified that Mr. Bosna went to prison in the spring of 2012 for

---

1. A transcript was unavailable due to the malfunction of the trial court's recording equipment. In order to supplement the record, the parties submitted a proposed statement of the evidence and amendments, the trial court issued a statement of the evidence on July 29, 2019, summarizing the testimony pursuant to App.R. 9(C), and the judge made his handwritten notes a part of the record.

2

burglary and drugs. She, Mr. Bosna's mother, Laura Vidmar ("Ms. Vidmar"), and N.I.B. visited Mr. Bosna in prison twice between May 2012 and June 2015. She and Mr. Bosna had a "J-Pay" account which allowed email communication while he was incarcerated. She began communicating with Mr. Bosna via this account in 2013 but stopped responding to his emails in June 2015, although he continued to send her messages. The record does not reflect how long Mr. Bosna continued to send email messages after she "stopped responding."

{¶7} Mrs. Burt discussed moving in with Ms. Vidmar in the summer of 2015, although this did not occur. She met Scott Burt in November 2015, moved in with him in June 2016, and married him in September 2016. She changed her phone number in July 2016 and did not give the new phone number to Ms. Vidmar or Mr. Bosna. She testified that Ms. Vidmar contacted her via Facebook Messenger, but she did not respond. Her last contact with Ms. Vidmar was in February 2016.

{¶8} Mrs. Burt testified that Mr. Bosna "was aware she got her mail at her parents' house" and that this was "her mailing address" but Mr. Bosna never sent mail to her or N.I.B. In October 2017, she wrote a letter to Mr. Bosna asking him to consent to adoption and included a consent form with her new address, but received no response. She testified that prior to the filing of the adoption petition in April 2018, she had not heard from Mr. Bosna since 2015.

{¶9} Mr. Bosna testified that he had been incarcerated since May 2012, and his

3

last contact with Mrs. Burt and N.I.B. was in 2015.[2]   He mailed no cards or correspondence since that time because he did not have Mrs. Burt's address. Although "[h]e could have gotten [Burt's parents'] address, and that was not difficult * * * he felt that if he sent a letter there, it would be thrown away." He received the consent form in October 2017 but did not sign it.

{¶10}  Ms. Vidmar testified that Mrs. Burt and Mr. Bosna lived with her beginning in 2009 when Mrs. Burt became pregnant.  Mrs. Burt and N.I.B. lived with her "on and off" for several years until 2014.  She continued to have contact with Mrs. Burt and N.I.B., but in September 2015 that contact became limited.  Around Christmas 2015, Ms. Vidmar no longer had Mrs. Burt's current phone number.  Ms. Vidmar contacted a common friend and requested for Mrs. Burt to call her, but no contact occurred.  Ms. Vidmar saw Mrs. Burt's parents at a store and inquired about N.I.B.  They told her they would have Mrs. Burt contact her, but this did not occur.  Mrs. Burt's mother, Maureen Bauer, testified that she and her husband did not pass along the message since they believed Ms. Vidmar was not "sincere or genuine."

{¶11}  On May 10, 2019, the court issued a judgment entry ruling that Mr. Bosna's consent to the adoption was not required under R.C. 3107.07.  The court found that he failed to maintain more than de minimis contact with N.I.B. for the year preceding the filing of the adoption petition given that his last communication with Mrs. Burt and N.I.B. was in 2015. The court further found no justifiable cause for the lack of communication because,

---

[2] The dissent cites a "lack of clarity" in the record regarding Mr. Bonsa's testimony as to the date of his last attempt to contact N.I.B.  Both the judge's handwritten notes and the App.R. 9(C) statement indicate Mr. Bosna testified that his last contact occurred in 2015 and "that is accurate." The notes taken by the trial court during Mr. Bosna's testimony read "last contact 2015-accurate" and a later note reads, "February 2017-probably right last."  It is only speculation that the latter note concerned a contact attempt and the trial court is in the best position to interpret its notes.  Moreover, Mr. Bosna did not raise any issue with the App.R. 9(C) statement on appeal.

4

although Mrs. Burt did not respond to 2015 email communications, Mr. Bosna did not mail other communications, such as cards or written correspondence, although he conceded "it would not have been difficult" to get Mrs. Burt's parents' mailing address. After he had actual knowledge of Mrs. Burt's mailing address in October 2017, he still did not attempt to communicate with N.I.B. On the same date, the court issued an interlocutory order of adoption and final order of adoption. These orders were stayed pending appeal.

{¶12} Mr. Bosna timely appeals and raises the following assignment of error:

{¶13} "The trial court erred and abused its discretion in finding that the father's consent was not required."

{¶14} Mr. Bosna argues that the trial court erred in finding that he did not have justifiable cause for his failure to have more than de minimis conduct with N.I.B., contending that clear and convincing evidence was not presented by Mr. Burt, and that the court's finding on this issue was against the manifest weight of the evidence. He also argues that the court failed to find there was de minimis contact for a one-year period.

### When Parental Consent Is Not Required

{¶15} "The right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Lasky*, 11th Dist. Portage Nos. 2004-P-0087, et al., 2005-Ohio-1565, ¶17, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986). "Since adoption terminates these fundamental rights, '[a]ny exception to the requirement of parental consent to adoption must be strictly construed so as to protect the rights of natural parents to raise and nurture their children.'" *Id.*, quoting *Masa* at 165. "Severing the parent-child relationship has been described as the family-law equivalent of the 'death penalty.'" (Citation omitted.) *In re Adoption of J.F.R-*

5

*W.*, 7th Dist. Belmont No. 16 BE 0045, 2017-Ohio-1265, ¶13, quoting *In re Hayes,* 79 Ohio St.3d 46, 48 (1997).

{¶16} Generally, a petition to adopt a minor child may be granted only if written consent is executed by the mother and father of the child. Pursuant to R.C. 3107.07(A), consent to adoption by a parent of a minor child is not required when "it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶17} In applying R.C. 3107.07, the court engages in a two-step analysis. *In re M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶23. First, the court must determine whether the natural parent failed to provide support or to have more than de minimis contact with the child, which findings "shall not be disturbed absent an abuse of discretion." *Adoption of J.P.E. & A.A.E.*, 11th Dist. Trumbull Nos. 2016-T-0113 & 2016-T-0114, 2017-Ohio-1108, ¶13, citing *M.B.* at ¶21-23. Then, if the court finds a lack of support or failure to have more than de minimis contact, it must decide whether there was "justifiable cause" for the failure, proven by clear and convincing evidence, a determination which "will not be disturbed on appeal unless it is against the manifest weight of the evidence." (Citation omitted.) *Id.* at ¶14, citing *M.B.* at ¶23-24; *See In re Adoption of Bovett*, 33 Ohio St.3d 102, (1987), paragraph four of the syllabus ("The question of whether a natural parent's failure to support his or her child has been proven by the petitioner by clear and convincing

evidence to have been without justifiable cause is a determination for the probate court, and will not be disturbed on appeal such determination is against the manifest weight of the evidence").

{¶18} To determine whether the judgment is against the weight of the evidence, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20, citing *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶19} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *J.P.E.* at ¶ 15, quoting *Eastley* at ¶21.

{¶20} "The petitioner for adoption has the burden to prove by clear and convincing evidence (1) that the natural parent failed to have more than de minimis contact or failed to provide for the maintenance and support of the child, for the requisite one-year period, and (2) that there was no justifiable cause for the failure." (Citation omitted.) *J.P.E.* at ¶12; *Bovett* at paragraph one of the syllabus; *In re Holcomb*, 18 Ohio St.3d 361, 368 (1985) ("Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication").

{¶21} The Supreme Court of Ohio has held that "[n]o burden is to be placed upon

7

the non-consenting parent to prove that his failure to communicate was justifiable. The statute is not framed in terms of avoidance, but is drafted to require petitioner to establish each of his allegations, including failure of communication and lack of justifiable cause." (Citation omitted.) *Holcomb* at 368. In applying this standard, this court has held that once the petitioner establishes by clear and convincing evidence a lack of communication in the year preceding the filing of the adoption petition, "the burden shifts to the natural parent to show some justifiable reason for the failure." (Citations omitted.) *In re M.E.M.*, 11th Dist. Lake No. 2010-L-020, 2010-Ohio-4430, ¶23. However, "[a]lthough the natural parent must come forward with some facially justifiable reason for the failure, the petitioner bears the ultimate burden to prove the natural parent was without justifiable cause for the failure." *J.P.E.* at ¶12; *see M.E.M.* at ¶23 ("[t]he burden of proof * * * remains on the petitioner").

**{¶22}** Mr. Bosna first argues that Mr. Burt failed to prove by clear and convincing evidence that he lacked justifiable cause for his failure to have contact with N.I.B. In an interrelated argument, he argues that the weight of the evidence demonstrated justifiable cause. Under both arguments, he contends that Mrs. Burt failed to respond to communications from himself and his mother and did not provide her address or telephone number to them, interfering with his ability to communicate with N.I.B.

**{¶23}** As the Supreme Court of Ohio has explained in *Holcomb*, "[t]he term 'justifiable cause' is imprecise and has been variously defined," further noting that the legislature did not intend to give a "precise and inflexible meaning" to the term. *Id.* at 367. Justifiable cause for failure to communicate with a child is established when there is "[s]ignificant interference by a custodial parent with communication between the non-

8

custodial parent and the child, or significant discouragement of such communication." *Id.* at paragraph three of the syllabus.

{¶24} "The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence." *Id.*

{¶25} There is no question there was interference by Mrs. Burt, but the issue is whether that interference was "significant." Mr. Bosna's avenues of communication with his young son were limited by the age of his son and his incarceration. "However, a natural parent's term of incarceration does not prevent that parent from communicating with the child or otherwise toll the one-year statutory time period." *In re Adoption of Doyle*, 11th Dist. Ashtabula Nos. 2003-A-0071 & 2003-A-0072, 2004-Ohio-4197, ¶14. There is also no question that Mrs. Burt stopped responding to Mr. Bosna's emails and changed her address and phone number, but Mr. Bosna acknowledged it would not have been difficult for him to obtain her parents' address. He simply surmised any correspondence would "just be thrown away."

{¶26} Critically, when he did receive a letter from Mrs. Burt in October 2017 indicating her husband's desire to adopt NIB, Mr. Bosna now had an address but did not send a letter, a Christmas card, or even a birthday card on the child's February 22nd birthday. He was "not precluded from sending cards or letters to the child[]or otherwise attempting to communicate outside the realm of physical visitation." *See id.* at ¶17.

{¶27} Mr. Bonsa argues Mrs. Burt's family also interfered. While Mrs. Burt's mother, Mrs. Bauer, testified that she and her husband did not pass along a message to Mrs. Burt from Mr. Bosna's mother since they believed she was not "sincere or genuine,"

9

third party interference is not a justifiable cause. The law requires only clear and convincing evidence that the custodial parent interfered. *In re Adoption of Hedrick*, 110 Ohio App.3d 622, 627-28 (8th Dist.1996).

{¶28} The dissent advocates for an overly broad definition of "significant interference," which is contrary to the directive in *Holcomb*, *supra*, that the determination of justifiable cause of a significant interference is best determined on a case-by-case basis and the court's observation that "we do not believe that the legislature intended to give a precise and inflexible meaning to the term 'justifiable cause.'" *Holcomb* at 367. The court determined "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists. * * * The probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." (Citation omitted.) *Id.*

{¶29} The two cases cited by the dissent in support of its "futility" argument, *In re Adoption of Johnson*, 12th Dist. Clinton No. CA92-11-023, 1993 WL 220240 (June 21, 1993) and *In re Adoption of C.S.*, 2d Dist. Montgomery No. 20557, 20558, & 20559, 2004-Ohio-5933, are procedurally inapposite. Both cases involved appellate review of the trial court's determination under the deferential standard set forth in *Holcomb* that the petitioner failed to prove that consent was not required. Here we are reviewing a finding that the petitioner did meet his burden to prove consent was not required. Even under the dissent's rubric, which appears to require affirmative acts of interference with an intent ("intentionally discouraging," "outright refusal"), we cannot find error in the trial court's findings. In this case, sadly, mother stopped responding and father stopped trying, and when given a last opportunity to reestablish contact, he failed to take advantage of the

opening.

{¶30} For the foregoing reasons, we affirm the judgment of the Ashtabula County Court of Common Pleas, Probate Division, finding that Mr. Bosna's consent to the adoption of his child was not required. Costs to be taxed against appellant.

TIMOTHY P. CANNON, J., concurs

MATT LYNCH, J., dissents with a Dissenting Opinion

_____

MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶31} I dissent from the majority's decision to affirm the lower court's judgment finding Bosna's consent was not needed for the adoption of his child, which has the impact of permanently depriving him of the ability to exercise his parental rights. Since the record indicates that the petitioner failed to meet his burden to prove, by clear and convincing evidence, that Bosna's lack of contact with his child was unjustified, reversal is warranted. Bosna's failure to communicate with his child was justified based on the conduct of N.I.B.'s mother, who repeatedly and purposely interfered with Bosna's ability to have access to his child. To hold otherwise serves to encourage interference with communication as a means of ensuring that the other parent's consent to adoption is not required.

{¶32} The serious nature of the present proceedings, which result in allowing the adoption of N.I.B. thereby terminating Bosna's parental rights, cannot be overemphasized. Ohio courts have repeatedly found that termination of a parent's rights

11

is the family law equivalent of the death penalty. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14; *In re J.W.*, 2018-Ohio-2475, 115 N.E.3d 650, ¶ 33 (11th Dist.). Furthermore, a "parent's right to raise a child is an essential and basic civil right." (Citations omitted.) *In re T.B.*, 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415, ¶ 29. For these reasons, the Ohio Supreme Court has held that parents "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) *In re Hayes, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).*

**{¶33}** The majority summarily concludes that Bosna's failure to communicate with his child was unjustified since there was a lack of significant interference with such communication, primarily referencing Bosna's ability to send mail to his child. However, to properly determine whether such interference has occurred, and before rendering a decision that effectively terminates a natural parent's rights, it is first necessary that this court reach a clear understanding of the meaning of "significant interference." Without doing so, it is impossible to determine whether the petitioner met his burden to demonstrate, by clear and convincing evidence, that there was no justifiable cause for Bosna's lack of communication.

**{¶34}** As the Ohio Supreme Court explained in *In re Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), justifiable cause for failure to communicate with a child is demonstrated when there is "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication." *Id.* at paragraph three of the syllabus. Significant interference is a concept that is not clearly defined under existing Ohio case law. Significant interference encompasses acts that are "important" and "interpose in a

12

way that hinders or impedes" contact between a parent and child.  Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/interfere, https://www.merriam-webster.com/dictionary/significant (accessed October 22, 2019).  While the majority declines to clarify when a party's actions constitute significant interference, I would hold that such interference arises when action is taken which prohibits or prevents the natural parent from being able to exercise parental rights to communication with his or her child, by intentionally discouraging such communication, foreclosing the parent from utilizing multiple methods of communication with the child, and/or repeated outright refusal to allow the parent to speak with, write to, or visit the child.  Examples of conduct that constitutes significant interference can include, but are not limited to, refusal to provide contact information for the child, failing to transmit letters or e-mails to the child, and failure to respond to attempts at communication from the natural parent.

{¶35}  In considering the evidence presented, and keeping in mind that the burden to demonstrate no justifiable cause exists is on the petitioner, there was not clear and convincing evidence to support a conclusion that Bosna lacked justifiable cause for his failure to communicate.  Here, critical to the determination of whether justifiable cause exists is consideration of Burt's abject failure to provide Bosna with avenues for communication in conjunction with his incarceration.  A parent's imprisonment is a factor which shall be considered by the courts in determining justifiable cause.  *In re J.A.B.*, 11th Dist. Trumbull No. 2013-T-0114, 2014-Ohio-1375, ¶ 37.  Inherent in that consideration is a determination as to how the inability to communicate is impacted by that incarceration. Since Bosna was incarcerated, his access to his child was solely dependent upon Burt, who took no steps to encourage communication but, rather, acted to purposely hinder it.

13

Burt's conduct made it nearly impossible for Bosna to communicate with his son and showed a complete disregard for his rights as a father.

{¶36} After moving in 2016, Burt failed to provide her new address or phone number to Bosna. Bosna's only available method of communicating directly with Burt and N.I.B. was through the J-Pay e-mail account. However, his ability to utilize this method was all but eliminated when Burt failed to respond to his e-mails, a fact which she conceded. Although Bosna did not attempt to communicate with N.I.B. or Burt during the one-year lookback period, it must be emphasized that this was due to Burt's conduct dating back as far as 2015. Courts "may examine any preceding events that may have a bearing on the parent's failure to communicate with the child, and the court is not restricted to focusing solely on events occurring during the statutory one-year period." *In re Adoption of I.M.M.*, 5th Dist. Ashland No. 16 COA 018, 2016-Ohio-5891, ¶ 29. There is no question that Burt also failed to respond to communications from Bosna's mother during and prior to the one-year time period, which further hindered Bosna's ability to receive the necessary contact information to facilitate communication. The majority fails to address how this wide-reaching conduct impacted Bosna and impeded his ability to communicate with his son.

{¶37} This interference is particularly problematic where the child is, as he was here, of a young age during the pertinent time period. For the vast majority of the one-year lookback period, N.I.B. was only seven years old. Additional methods of communication that may be available with an older child, such as social media or a direct telephone call, were limited, leaving Bosna reliant upon cooperation from Burt for communication. She not only failed to facilitate communication but made it more difficult,

14

constituting significant interference under these circumstances. "Where a custodial parent's substantial efforts have 'deprived the non-custodial parent of the opportunity of enjoying a meaningful relationship with his [or her] child * * * the law should not further reward [the custodial parent's] discordant efforts by countenancing a termination of the non-custodian's parental rights in a non-consensual adoption proceeding.'" (Citation omitted.) *In re Adoption of A.L.S.*, 2018-Ohio-507, 106 N.E.3d 69, ¶ 23 (12th Dist.). The majority recognizes Bosna's limited avenues of communication yet fails to address why this does not render Burt's interference significant.

{¶38} While the majority notes that Bosna had the ability to contact N.I.B. by sending letters to Burt's parents' house, Bosna testified that he did not believe such communications would be given to his son. This belief was confirmed by Bauer's testimony that she and her husband did not pass along a message to Burt from Bosna's mother since they believed she was not "sincere or genuine." All of the activities of Burt and her parents demonstrated that Bosna was not welcome to communicate with his son. Further, even if this one channel of communication was technically available, "significant interference" does not mean such interference that prevented any and all means of communication.

{¶39} In relation to the foregoing, the majority contends that any interference by a third party, such as Burt's mother, cannot be considered in determining justifiable cause. Regardless of whether this conduct can provide justifiable cause, the testimony of Burt's mother buttresses Bosna's argument that attempts at contact would be unsuccessful, a critical issue in this case. Importantly, while the majority also points out that Bosna could have obtained Burt's parents' address for the purpose of supporting the point that Bosna

15

had the ability to communicate with N.I.B. through mail, a conclusion that his failure to do so was unjustified relies on the assumption that the grandparents would be cooperative. It is inconsistent for the majority to consider Bosna's failure to send mail to this address as evidence of no justifiable cause while also finding that consideration of the grandparent's conduct is not relevant for determining justifiable cause.

{¶40} Also in support of its conclusion that there was not significant interference, the majority notes that Bosna had Burt's address for approximately six months prior to the filing of the petition for adoption and could have made contact during that time. While it may be the case that he could have sent a letter or card, it does not follow that his failure to communicate was *unjustified*. When he finally did receive a current address, Bosna was still entirely reliant on Burt to pass along any communications to N.I.B. and had a more than reasonable belief that she would not do so. Burt had made no effort to communicate any message Bosna sent via e-mail, a fact which was evident to him from her lack of responsiveness. The testimony and actions of Burt and Bauer demonstrated a desire to "move on" and facilitate no communication between N.I.B. and Bosna, corroborating the validity of Bosna's belief that attempts at communication would be futile. The fact that Bosna eventually received a valid address did nothing to mitigate Burt's persistent and significant interference. It also should not be overlooked that Burt did not finally provide her new address out of concern that Bosna was unable to communicate with N.I.B. Rather, the address was provided only when Bosna was mailed a consent to adoption form. It is understandable that receiving this address would not instill in Bosna a belief that communications would be conveyed to his son.

{¶41} Failure to communicate has been found justified when a parent had reason

16

to believe efforts to do so would be fruitless. In *In re Johnson*, 12th Dist. Clinton No. CA92-11-023, 1993 WL 220240 (June 21, 1993), where the mother refused or failed to respond to multiple requests for visitation prior to the one-year period during which the father did not attempt communication, the court found it was "plausible" that the father "believed it would be futile to attempt communication with his daughter by mail where he anticipated it would be intercepted before she received it." *Id.* at *3. *Also In re C.S.*, 2d Dist. Montgomery Nos. 20557, et al., 2004-Ohio-5933, ¶ 26 (where the father had previously failed to allow the mother contact and the grandmother restricted telephone contact for a period of months, the mother's limited, unsuccessful attempts at contact were justified since "the trial court could have reasonably concluded that [the mother] believed her efforts would have been futile"). For the reasons outlined above, Bosna had a reasonable belief that his efforts would have been pointless.

{¶42} It must be emphasized that significant interference is evaluated by examining the conduct of the party interfering with visitation and that justifiable cause is not determined by evaluating "whether it was possible for the natural parent to have done more to overcome the interference with visitation and communication." *In re J.P.E.*, 11th Dist. Trumbull Nos. 2016-T-0113 and 2016-T-0114, 2017-Ohio-1108, ¶ 26. Burt's interference provides justifiable cause regardless of whether Bosna could have attempted some additional means of communication, although, as outlined above, the success of any attempts would be questionable at best. Bosna was not required to do more to try to overcome the significant interference that occurred in this case. *Id.* ("There is ample evidence that would allow the trial court to find appellants significantly interfered with or discouraged the several contacts appellee and her family attempted to make. Appellee

17

was not required to do more to overcome appellants' interference with her attempts.").

{¶43} While the parties as well as the majority address the issue of whether the lack of justifiable cause was proven by the petitioner by clear and convincing evidence, the lower court, as the basis for its decision, found that Bosna "failed to meet his evidentiary burden as identified and discussed in *In re H.R.*, supra." This refers to the "burden of going forward" and demonstrating "some facially justifiable cause" for the failure to have contact with the child. (Citation omitted.) *In re H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 24; *see J.P.E.* at ¶ 12 (the natural parent "must come forward with some facially justifiable reason" for the lack of communication).

{¶44} While a clear definition of "facially justifiable cause" in this context is lacking, the requirement to demonstrate a facially justifiable cause is much more limited than the burden placed on the petitioner; a "facial" justification is something that is "apparent" or established "on the face of things." Black's Law Dictionary 627 (8th Ed.2004); *see In re Adoption of C.L.B.*, 191 Ohio App.3d 64, 2010-Ohio-5190, 944 N.E.2d 1190, ¶ 11 (3d Dist.) (father "is not required to prove that he has a justifiable reason, only to present a facially justifiable claim"); *In re J.F.R-W.*, 7th Dist. Belmont No. 16 BE 0045, 2017-Ohio-1265, ¶ 18 ("unlike the clear-and-convincing burden that petitioners[] bear, natural parents need only show some facially justifiable cause for their failure"). Courts must be careful not to create a heightened requirement in applying this standard. A facial justification, by the ordinary meaning of the term, requires only a showing which allows the matter to proceed forward. In fact, the Ohio Supreme Court stated in *Holcomb* that "[n]o burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable." 18 Ohio St.3d at 368, 481 N.E.2d 613. Given that the burden of proof is

18

placed entirely on the petitioner seeking adoption, the purpose of demonstrating facially justifiable cause is to bring to light the fact that the natural parent has a plausible defense to the failure to communicate, not to saddle that parent with an unnecessary burden, especially given the serious and final nature of an adoption case. It bears repeating that exceptions to the parental consent requirement must be construed in a manner that protects the rights of natural parents. *In re Adoption of Lasky,* 11th Dist. Portage Nos. 2004-P-0087, et al., 2005-Ohio-1565, ¶ 17.

{¶45} Considering the uncontroverted testimony that Burt and her parents failed to respond to requests for contact and communication as outlined above, and the fact that Bosna could have had no direct contact with N.I.B. given that he was completely dependent upon Burt's cooperation due to his incarceration, it is evident that a facially justifiable cause for the lack of contact was demonstrated. Since petitioner failed to meet his burden to present clear and convincing evidence to demonstrate a lack of justifiable cause for Bosna's failure to communicate, his consent is necessary for the petition for adoption to proceed and this matter should be reversed. *See In re M.E.M.*, 11th Dist. Lake No. 2010-L-020, 2010-Ohio-4430, ¶ 31, 35 (where there was a lack of clear and convincing evidence that the father was not prevented from visiting his child, there was "justifiable cause for his failure to communicate and, accordingly, his consent is necessary for [the] petition for adoption to proceed").

{¶46} Finally, the lack of clarity in the record of the hearing conducted in this matter should not be overlooked. Since no transcript of the proceedings is available due to a recording malfunction, the trial court properly issued an App.R. 9(C) statement of the evidence in an effort to replicate the testimony presented. The judge, however, also

19

provided his notes from the hearing to both parties and, as stated in the court's judgment entry, ordered they be made part of the record. These notes are cited extensively in the appellee's brief, including a reference to Bosna's testimony for the proposition that his last attempt to contact N.I.B. was in February 2017, which is not reflected as his testimony in the App.R. 9(C) statement. This discrepancy further highlights the difficulty this court faces in holding that the record demonstrates appellee met his burden to prove, by clear and convincing evidence, that the lack of contact was unjustified. A parent should not be given the family law equivalent of the death penalty based upon an unclear record that fails to meet the well-established legal burden.

{¶47} Given the serious nature of this case, depriving a father of his right to raise his child, the mother's substantial interference with his ability to exercise that right, and the petitioner's failure to satisfy the burden that is rightfully placed on him, I respectfully dissent.