OPINION
{¶ 1} This accelerated appeal is before this court from the September 13, 2004 decision of the Portage County Court of Common Pleas, Probate Division, holding that the consent of the natural father, appellant, Daniel J. Lucas ("Lucas"), was not necessary for the adoption of Lucas' three minor children, Julia Marie ("Julia"), born on January 8, 1993; Danielle Nicole ("Danielle"); born on June 11, 1995; and Joseph Andrew ("Joseph") Lucas, born on June 15, 1998; by David Lasky ("Lasky"). We affirm the decision of the probate court.
 {¶ 2} Lucas and Victoria Lasky ("Victoria") were married on October 5, 1996, and separated in September 2000, after a tumultuous marriage. Victoria filed for divorce in October 2000, which was finalized in October 2001. After separating, Victoria was living with Lasky at his home in Garfield Heights with the children. Lucas visited with the children up until June of 2001, which was the last time he saw them. Victoria married Lasky on November 9, 2001. Victoria and Lasky lived in the Garfield Heights home until June 2002, at which time, they moved with the children to Aurora, Ohio.
 {¶ 3} In September 2001, Lucas was incarcerated as the result of a probation violation, related to a prior domestic violence conviction, of which Victoria was the victim. The probation violation consisted of a positive drug test for cocaine. While in the Ohio penal system, Lucas first was placed in the Lorain Correctional Institution, but was transferred in December of 2001 to the Mansfield Correctional Institution. While incarcerated in Mansfield, Lucas received $15.00 per month. Lucas admitted that, because of his minimal income and lack of assets, he did not send any financial support to his children while he was in prison. Lucas remained in the Mansfield Correctional Institution until April of 2002, at which time he was transferred to the Community Corrections Association ("CCA") in Youngstown, and was granted work release. While at CCA, Lucas was employed with N.R. Prater Concrete ("Prater"), where he worked 20 to 25 hours per week, for $8 per hour. During the work release portion of Lucas' incarceration, certain deductions were taken from his pay by the CCA, leaving Lucas with $40 to $50 per week. Lucas admitted that he did not send any money to support his children, nor did he attempt to contact them during this time. Lucas remained with CCA until August 5, 2002, when he was released from confinement.
 {¶ 4} Following his release, Lucas remained at Prater, where his pay increased to $10 per hour. Lucas worked from 30 to 35 hours per week at Prater, until November of 2002. Of the approximately $350 per week Lucas earned during this period, he admitted not sending any money to support the children. Subsequent to his employment with Prater, Lucas worked as a subcontractor, doing carpet and tile installation, from November 2002, through the early part of 2003. During this time, he earned approximately $1,500, but again, Lucas admitted that he did not send any money to support his children.
 {¶ 5} On February 24, 2003, Lasky filed three separate petitions of adoption in the probate court to adopt Julia, Danielle and Joseph. Each petition contained sections requiring that the petitioner list the names and last known addresses of individuals whose consent to the adoption was either required or not required. In the section indicating the names of persons whose consent was required, Lasky listed Victoria's name. On February 24, 2003, Victoria filed her consent to Lasky's adoption of the children with the probate court.
 {¶ 6} In the section of the petition listing the names of persons whose consent was not required, Lasky listed the name of Lucas, the former husband of Victoria and the children's natural father. In the petition, Lasky alleged that Lucas' consent to the adoption of the children was not required, since Lasky had failed to communicate with them for the period of at least one year preceding the filing of the petition and because Lasky had failed, without justifiable cause, to provide for the maintenance and the support of the children for a period of at least one year preceding the filing of the petition. As proof of Lucas' failure to financially support the children, Lasky attached a certified audit report from the Cuyahoga County Child Support Enforcement Agency ("CSEA") to his complaint, showing an arrearage of child support in the amount of $9,033.54. The audit report covered the period from December 1, 2000 through January 1, 2004 and indicated that no support payments of any kind were made for the entire period. Additionally, the report indicated that while Lucas' monthly support obligation for the three children was $884.00 per month, an adjustment was made, effective October 1, 2001, reducing Lucas' obligation to $490.66 per month. A month later, the support obligation for the three children was reduced, yet again, to only $52.02 per month, and remained at this level for the remainder of the period covered by the report.
 {¶ 7} On March 28, 2003, Victoria filed with the court an affidavit in support of service by publication, averring that she and Lucas last resided together in Cuyahoga County prior to their divorce in October of 2001, and that Lucas had been in the custody of the Ohio Department of Rehabilitation and Correction as the result of a conviction for domestic violence until approximately April of 2002. Victoria further alleged that while she was aware that Lucas had been released from custody, she had no contact with him, and was not aware of his current address or any other address at which he resided since his release, despite a diligent attempt to do so.
 {¶ 8} The probate court subsequently approved service by publication, and notice of the hearing on the petition for adoption was published in the Portage County Legal News on April 8, 15, and 22 of 2003. Lucas did not appear at the hearing. The children's adoptions were finalized on August 26, 2003.
 {¶ 9} On December 24, 2003, Lucas filed a motion to vacate the final decree of adoption and requested an oral hearing, alleging that Lasky failed to use reasonable diligence to locate Lucas after the petition was filed and, therefore, the service of process by publication was fatally defective.
 {¶ 10} On January 27, 2004, Lasky filed a memorandum in response to Lucas' motion to vacate. On January 28, 2004, the probate court scheduled an evidentiary hearing on the exercise of due diligence and the issue of service by publication. On February 18, 2004, the parties subsequently agreed, via agreed judgment entry, to vacate the adoption entry on the ground that sufficient service was not perfected on Lucas. It was further stipulated in the judgment entry that when effective service was made upon Lucas, the probate court would set the matter for further proceedings. On February 20, 2003, a copy of the petition was sent to Lucas via certified mail.
 {¶ 11} On July 13, 2004, Lucas filed a motion to dismiss the petition. On July 20, 2004, the consent hearing was held, at which time Lucas' motion to dismiss was denied.
 {¶ 12} On September 13, 2004, the probate court issued its judgment entry, finding, based upon Lucas' own testimony, that he failed to provide maintenance and support to his children pursuant to the court order of the Cuyahoga County Domestic Relations Court from February 24, 2002, through February 24, 2003. Therefore, his consent was not necessary for the adoption of his three children. A hearing on the best interests of the children has been stayed in the probate court, pending the resolution of this issue on appeal.
 {¶ 13} Lucas timely appealed, asserting three assignments of error:
 {¶ 14} "[1.] The Trial Court's determination that Daniel J. Lucas failed to support his minor children without justifiable cause is against the manifest weight of the evidence.
 {¶ 15} "[2.] The Trial Court failed to comply with Ohio law, by failing to dismiss the Petitions for Adoption once they had been vacated.
 {¶ 16} "[3.] The Trial Court improperly denied Daniel Lucas' Motion to dismiss despite the egregious fraud of Appellee and Victoria Lynn Lasky upon the Court in securing service by publication."
 {¶ 17} "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." In reAdoption of Masa (1986), 23 Ohio St.3d 163, 165 (citations omitted). Since adoption terminates these fundamental rights, "[a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the rights of natural parents to raise and nurture their children." Id (citation omitted).
 {¶ 18} R.C. 3107.07(A), provides that the consent of a natural parent is not required for adoption if the court finds, after proper service of notice and a hearing, that "the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law * * * for a period of at leastone year immediately preceding * * * the filing of the adoption petition
* * *." (Emphasis added).
 {¶ 19} The petitioner for adoption, thus has the "burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child[ren] for the requisite one-year period, and (2) that his failure was without justifiable cause." In re Adoption ofBovett (1987), 33 Ohio St.3d 102, at paragraph one of the syllabus, following Masa, 23 Ohio St.3d 163, paragraph one of the syllabus; In reAdoption of Geisman (Sep. 29, 2000), 11th Dist. No. 99-A-0071, 2000 Ohio App. LEXIS 4572, at *5. The same test and standards of proof also apply to the issue of the natural parent's communications with the children. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, at paragraph four of the syllabus. Clear and convincing evidence is that measure of proof "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus. It is more than a preponderance of the evidence, but does not rise to the level of beyond a reasonable doubt. Id.
 {¶ 20} Once the petitioner establishes, by clear and convincing evidence, that the natural parent failed "to support the child[ren] for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner." Bovett, 33 Ohio St.3d 102, at paragraph two of the syllabus. In other words, "the adopting parent has no legal duty to prove a negative. If the natural parent does not appear to go forward with any evidence or justification, obviously the adopting parent has only the obligation of proving failure of support by the requisite standard."Masa, 23 Ohio St.3d at 167.
 {¶ 21} Finally, the probate court's determination finding that a natural parent has failed to support his or her children without justifiable cause will not be disturbed by an appellate court unless that finding is against the manifest weight of the evidence. Bovett,33 Ohio St.3d 102, at paragraph four of the syllabus; Masa, 23 Ohio St.3d at paragraph two of the syllabus. "In other words, a probate court's judgment will not be reversed if it is supported by some competent, credible evidence." In re Long (Dec. 20, 1996), 11th Dist. No. 96-A-0041, 1996 Ohio App. LEXIS 5794, at *3, citing In re Adoption ofKuhlmann (1994), 99 Ohio App.3d 44, 49; In re Adoption of Hale (Jul. 22, 1988), 11th Dist. No. 12-238, 1988 Ohio App. LEXIS 2945, at *8.
 {¶ 22} In the instant matter, we note, at the outset, that the relevant period for determining whether Lucas retained a right to consent to the adoption of his children ran from February 24, 2002, until February 24, 2003. There was a large amount of evidence adduced at trial as to what happened outside of this period. This court will confine its review to the events which occurred from February of 2002 to February of 2003 to determine whether Lasky has satisfied his burden of proof as to both elements, and whether Lucas has raised any justifications for his failure to support the children.
 {¶ 23} In his first assignment of error, Lucas argues that the trial court's finding that he failed to support the children was against the manifest weight of the evidence. Lucas argues that the trial court failed to consider the fact that he was incarcerated for six months of the one year period prior to the filing of the adoption, and only had sufficient money to pay for his necessaries and basic living expenses. Essentially, he is arguing that his failure to support his children during the entire statutory period was justifiable, given his means and the nominal contributions he made during the one year period prior to the filing of the petition. This argument is without merit.
 {¶ 24} The evidence adduced at trial shows that, for the relevant period, Lucas made no contributions in support of his children. Lucas was incarcerated in the Mansfield Correctional Facility for two months, from February of 2002 until April of 2002. During this period of time, Lucas received $15.00 per month, which he used on "necessaries," and admits that he did not send any of these funds to support the children. From April 2002 until the date of his release from CCA, August 5, 2002, Lucas retained, after taxes and other deductions, approximately $200 per month, of which he admitted none was ever forwarded to support the children, because after buying clothing, toiletries, and lunches when he was working, "he didn't have any money left."
 {¶ 25} Furthermore, from August 5, 2002, until sometime in November 2002, Lucas earned $350 per week before taxes, and was living in his uncle's basement. From November 2002, through Spring of 2003, Lucas earned approximately $1,500 installing carpet and tile as a subcontractor. Again, he did not forward any money to support his children. Although Lucas claimed that he "knew that child support had to be an issue," he could not explain why he did not contact CSEA and either make child support payments or request for an adjustment in the amount he was required to pay. When asked specifically why he did not make payments during this time, Lucas replied, "I always knew child support was important. I just really didn't know the right way to go about the whole situation and that's my mistake." When asked if he made any attempts to contact CSEA at any time between August of 2002, and February of 2003, Lucas replied that he contacted CSEA in December of 2002, and "found out exactly what I needed to do," but did not make arrangements to pay any support because he, "was going through a court proceeding in Cuyahoga county and was waiting to see what happened."
 {¶ 26} Lucas relies on this court's decision in the case In reAdoption of Rodgers, 11th Dist. No. 2002-T-0171, 2003-Ohio-1424, to support the proposition that a natural parent's meager income during incarceration may provide justification for his or her failure to provide support. While this may be the case in certain limited circumstances, Lucas' reliance on Rodgers is misplaced.
 {¶ 27} In Rodgers, the natural parent of the child whose consent was at issue, was incarcerated for the entire statutory period, and remained incarcerated when the hearing on the petition was held. Lucas, on the other hand, was only incarcerated for two months of the statutory period, and testified at length during the hearing. Furthermore, inRodgers, the natural parent received $20 as monthly income while incarcerated, although she did receive some money from family and friends totaling up to $140 per month. In addition, the mother in Rodgers
attempted to maintain communication with her child, and sent her small gifts of clothing, when she was able. This court was particularly influenced by the fact that the natural parent in Rodgers had four other children to whom she also owed support, and to expect the mother, in this situation, to provide a greater measure of support for this one child the petitioners were seeking to adopt, given her meager income, would have created an unreasonable burden on her.
 {¶ 28} Lucas' income for the statutory period was not only significantly greater than the parent in Rodgers, but by his own admission, Lucas did not make any attempt to communicate or have any contact with his children, except one time sending poems he had written along with small gifts for the children.
 {¶ 29} Assuming, arguendo, that these gifts constituted "support" under R.C. 3107.07(A), they were given before the statutory period. Lucas' failure to provide any additional support to the children duringthe statutory period and subsequent to his release from confinement, when his income was significantly greater, is without justification.
 {¶ 30} The Supreme Court of Ohio has held that, under R.C. 3107.07(A), the probate court determines the issue of justifiable cause by "weighing the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support." Bovett,33 Ohio St.3d 102, at paragraph three of the syllabus. Furthermore, the statute requires that the court consider "whether the parent's failure to support the child[ren] for that period as a whole (and not just a portion thereof) was without justifiable cause." Id (emphasis sic). Thus, when looking at the statutory period as a whole, the probate court's finding that Lucas failed to support his children is supported by competent and credible evidence. The first assignment of error is without merit.
 {¶ 31} Under his second assignment of error, Lucas argues that, due to the failure of service, the provisions of R.C. 3107.14(C) and (D) have not been met. Therefore, Lucas argues that the petitions must be dismissed. Lucas raised this argument for the first time in his appellate brief. It is a long-standing axiom that, an appellate court "will not consider a question not presented, considered, or decided by a lower court." Kalish v. Trans World Airlines, Inc. (1977), 50 Ohio St.2d 73, 79;Dostal v. Dostal, 11th Dist. No. 2001-P-0113, 2002-Ohio-2819, at ¶ 9. Since Lucas did not raise this argument at trial or in any motion to dismiss, we need not consider it now.
 {¶ 32} In his third assignment of error, Lucas contends that because the allegations made by Victoria in her affidavit in support of service by publication were "fraudulent" since she did not use "reasonable diligence" to locate him, as required by Civ.R. 4.4, his motion to dismiss should have been granted, pursuant to In re the Adoption ofBurger (Mar. 31, 2000), 11th Dist. Nos. 98-P-0120 and 98-P-0121, 2000 Ohio App. LEXIS 1437 (holding that since proper service was not made, the court did not have personal jurisdiction over the appellant, thus, the proceedings never properly commenced and the action was a nullity requiring dismissal). Lucas' reliance on Burger is misplaced.
 {¶ 33} Unlike the parties in Burger, Lucas and Lasky agreed, via judgment entry, to vacate the original judgment granting adoption on August 26, 2003, on the ground that service on Lucas had not been perfected to allow the probate court to exercise jurisdiction. However, the judgment entry further stated that "[t]he parties * * * stipulate that, upon service of the petition in this matter upon Respondent Daniel Lucas, the Court shall then set the matter for further proceedings." Lucas subsequently received proper service, and the case went forward.
 {¶ 34} While parties are unable to confer subject matter jurisdiction on a court, they may, by agreement, submit to the court's exercise of personal jurisdiction over them. Putnam v. Hogan (1997),122 Ohio App.3d 351, 355. Personal jurisdiction may be waived in one of three ways: (1) service of process; (2) voluntary appearance and submission to the court's jurisdiction; or (3) other acts the defendant commits that constitute a waiver of the jurisdictional defense. In reRandolph, 11th Dist. Nos. 2003-T-0017 and 2003-T-0018, 2005-Ohio-414, at ¶ 8. In the instant matter, Lucas affirmatively submitted to the court's jurisdiction in the following ways: by filing a motion to vacate the August 26, 2003 adoption judgment and requesting a hearing; by stipulating to service of process; and by mutually stipulating to have the case heard on its merits. "When the parties have agreed, without objection and with the judge's approval, to enter into stipulations for the record, the court will not consider objections to such stipulations on appeal." DiGuilio v. DiGuilio, 8th Dist. No. 81860, 2003-Ohio-2197, at ¶ 32, quoting In re Annexation of Territory of Riveredge Twp. to City ofFairview Park (1988), 46 Ohio App.3d 29, 31. Furthermore, "it is well-established in Ohio that a party may not appeal a judgment to which he has agreed." Bd. of Commrs. of Montgomery Cty. v. Saunders, (Nov 2, 2001), 2nd Dist. No. 18592, 2001 Ohio App. LEXIS 4887, at *5; Fekete v.Fekete (Feb. 24, 2000), 8th Dist. No. 74340, 2000 Ohio App. LEXIS 652, at *16; also Grubic v. Grubic (Sept. 9, 1999), 8th Dist. No. 73793, 1999 Ohio App. LEXIS 4200, at *9 (citation omitted). Since it is clear that Lucas agreed to waive the issue of failure of service, he cannot now argue the issue of the trial court's lack of personal jurisdiction on appeal. Lucas' third assignment of error is without merit.
 {¶ 35} The judgment of the Portage County Court of Common Pleas, Probate Division, is affirmed.
Ford, P.J., Rice, J., concur.