[Cite as *In re Adoption of R.R.L.*, 2022-Ohio-1100.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| IN THE MATTER OF: | **CASE NO. 2021-T-0047** |
|---|---|
| THE ADOPTION OF R.R.L. | |
| | Civil Appeal from the Court of Common Pleas, Probate Division |
| | Trial Court No. 2021 ADP 0004 |

**O P I N I O N**

Decided: March 29, 2022
Judgment: Affirmed

*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483 (For Appellant, Danielle Marie Lee).

*Brendan J. Keating*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Appellee, Raymond Finney).

MATT LYNCH, J.

{¶1} Appellant, Danielle Lee, appeals from the judgment of the Trumbull County Court of Common Pleas, Probate Division, dismissing her petition for adoption. For the following reasons, we affirm the decision of the court below.

{¶2} Raymond Finney is the biological father of R.R.L., born January 11, 2014. R.R.L.'s biological mother is Addison Popescu.

{¶3} On January 27, 2021, Lee, a friend of Popescu, filed a Petition for Adoption of R.R.L. The petition alleged that Finney's and Popescu's consent to adoption was not required since they failed to have more than de minimis contact with R.R.L. over the past

year and had not paid support during that time.

{¶4} On May 4, 2021, Popescu and Finney filed an Objection to Petition for Adoption, alleging Lee had interfered with their ability to have contact with R.R.L.

{¶5} A hearing was held on August 30, 2021. The following testimony was presented:

{¶6} Danielle Lee, who has legal custody of R.R.L., was friends with Popescu in high school and has known Finney since they were children. After R.R.L. was born, he and Popescu resided with Lee because they had nowhere else to stay. Lee would often babysit R.R.L., who lived with her the majority of the time from 2014 to 2017 and lived alone with her during a period of time when Popescu had moved out of state. Lee described that Finney had come to her house on one occasion, when R.R.L. was around the age of one, and tried to "kick in" the back door to get him. According to Lee, Finney did not have much contact with R.R.L. after that point.

{¶7} In October 2017, Children Services became involved and Lee was granted legal custody of R.R.L. in August 2018. She testified that Popescu's last physical contact with R.R.L. was June 4, 2018. Lee believed that Finney's last contact with R.R.L. was prior to the age of two. Lee testified that Finney last contacted her through a Facebook message in August 2019 expressing a desire to have R.R.L. together with his other child and she told him to take her to court. She testified that Finney and his family had no contact with her or R.R.L. in the year preceding the filing of the petition for adoption.

{¶8} As to the issue of child support, Lee was aware Finney had been paying back child support to Popescu while there was also a support order owed to her. She acknowledged that in the year preceding the filing of the adoption petition, Finney paid

2

child support to her but not his entire obligation. Pursuant to her testimony, Finney owed her $252.14 per month and paid about half of that "most months."

{¶9} Finney testified that he helped raise R.R.L. during the first year of his life prior to breaking up with Popescu. He hand delivered cards during the first three years of his life but regular contact ended when R.R.L. was about three. Finney testified that he has asked to bring presents and visit R.R.L. but was told by Lee he would be arrested for trespassing if he came to her house. Attempts to call Lee would ring once and he believed his number was blocked. He tried calling from other phone numbers and as soon as he spoke, Lee hung up.

{¶10} On August 19, 2019, Finney saw Lee and R.R.L. at a gas station, approached the vehicle, and tried to speak with her. Lee jumped back in her car and sped out of the parking lot. He contacted Lee on July 12, 2020, through Facebook to let her know that he was paying child support and asked if he could see R.R.L. Finney denied his request and threatened to call the police if he showed up at her house. She said she did not want him to see R.R.L. and he would have to go through the courts to get visitation. Finney testified that he did not go to Lee's house in the year preceding the filing of the adoption proceedings because he was afraid to go to jail and did not seek visitation because he was unable to afford the cost of court proceedings. He denied kicking the door when he came to Lee's house to see R.R.L.

{¶11} Finney's mother testified that she had contacted Lee for a visit about a year prior to the hearing via text message and Lee said, "Absolutely not. Do not ever contact me again." She tried calling later, the number was not in service, and Lee's Facebook page was no longer accessible. Popescu's mother testified that Lee also would not allow

3

her to visit with R.R.L. and made excuses for not allowing visitation. She received no responses to Facebook messages and text messages sent to Lee.

{¶12} Popescu testified that in September 2020, she saw Lee and R.R.L. at the mall, approached Lee to ask if she could talk with R.R.L. and Lee said no, grabbed him, and walked away. Popescu's boyfriend, Steven Miller, confirmed that the incident occurred. Popescu also testified that Finney had not kicked the door at Lee's residence.

{¶13} In an October 25, 2021 Judgment Entry, the trial court ruled that Popescu's consent was not required for the adoption, Finney's consent was required, and dismissed the petition. It determined that Finney "reliably testified that he attempted to have communication with the minor when he saw the minor at Speedway but was thwarted by the Petitioner in his efforts to do so," he was threatened with the police if he came to the minor's home, and he was blocked on social media. The court found that interference prior to the year preceding the adoption impacted Finney's conduct. It concluded the Petition did not prove by clear and convincing evidence that the failure of Finney to have more than de minimis contact was without justifiable cause. It also found that Finney paid more than his yearly child support obligation in the preceding year, although the support was paid to Popescu rather than Lee.

{¶14} Lee timely appeals and raises the following assignments of error:

{¶15} "[1.] The trial court erred in finding that the birth father was justified in not contacting the minor child the year before the petition for adoption was filed.

{¶16} "[2.] The trial court erred in finding that the birth father provided support pursuant to law and judicial decree for the year prior to the petition for adoption being filed."

4

{¶17} "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Lasky*, 11th Dist. Portage Nos. 2004-P-0087, et al., 2005-Ohio-1565, ¶ 17, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986). "Since adoption terminates these fundamental rights, '[a]ny exception to the requirement of parental consent to adoption must be strictly construed so as to protect the rights of natural parents to raise and nurture their children.'" (Citation omitted.) *Id.* "Severing the parent-child relationship has been described as the family-law equivalent of the 'death penalty.'" *Matter of Adoption of J.F.R.-W.*, 7th Dist. Belmont No. 16 BE 0045, 2017-Ohio-1265, ¶ 13, citing *In Re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶18} Generally, a petition to adopt a minor child may be granted only if written consent is executed by the mother and father of the child. Pursuant to R.C. 3107.07(A), consent to adoption by a parent of a minor child is not required when "it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶19} In applying R.C. 3107.07, the court engages in a two-step analysis. *In re M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23. First, the court must determine whether the natural parent failed to provide support or to have more than de minimis contact with the child, which findings "shall not be disturbed absent an abuse of

5

discretion." *Adoption of J.P.E.*, 11th Dist. Trumbull Nos. 2016-T-0113 and 2016-T-0114, 2017-Ohio-1108, ¶ 13, citing *M.B.* at ¶ 21. Then, if the court finds a lack of support or failure to have more than de minimis contact, it must decide whether there was "justifiable cause" for the failure, proven by clear and convincing evidence, a determination which "will not be disturbed on appeal unless it is against the manifest weight of the evidence." *Id.* at ¶ 14; *In re Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph four of the syllabus ("[t]he question of whether a natural parent's failure to support his or her child has been proven by the petitioner by clear and convincing evidence to have been without justifiable cause is a determination for the probate court, and will not be disturbed on appeal" unless against the weight of the evidence). To determine whether the judgment is against the weight of the evidence, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *J.P.E.* at ¶ 15, citing *Eastley* at ¶ 21.

{¶20} In her first assignment of error, Lee argues that Finney's failure to contact R.R.L. was not justifiable since he made limited attempts at contact, had difficulty recalling the attempts that were made, and she did not significantly interfere with his ability to contact R.R.L.

{¶21} "The petitioner for adoption has the burden to prove by clear and convincing

6

evidence (1) that the natural parent failed to have more than de minimis contact * * * for the requisite one-year period, and (2) that there was no justifiable cause for the failure." *J.P.E.* at ¶ 12; *Bovett* at paragraph one of the syllabus; *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The Ohio Supreme Court has held that "[n]o burden is to be placed upon the non-consenting parent to prove that his failure to communicate was justifiable. The statute is not framed in terms of avoidance, but is drafted to require petitioner to establish each of his allegations, including failure of communication and lack of justifiable cause." *Holcomb* at 368. In applying this standard, this court has held that once the petitioner establishes by clear and convincing evidence a lack of communication in the year preceding the filing of the adoption petition, "'the burden shifts to the natural parent to show some justifiable reason for the failure.'" (Citations omitted.) *In re M.E.M.*, 11th Dist. Lake No. 2010-L-020, 2010-Ohio-4430, ¶ 23. However, "[a]lthough the natural parent must come forward with some facially justifiable reason for the failure, the petitioner bears the ultimate burden to prove the natural parent was without justifiable cause for the failure." *J.P.E.* at ¶ 12; *M.E.M.* at ¶ 23 ("[t]he burden of proof * * * remains on the petitioner").

{¶22} There is no dispute that Finney did not have more than de minimis contact with R.R.L. in the year preceding the adoption. The lower court found, however, that the lack of contact was justifiable due to Lee's interference. We find this determination is supported by the evidence.

{¶23} Finney testified that he sent messages to Lee seeking contact with R.R.L. and was told that if he came to the house, the police would be called. According to Finney, when he saw Lee and R.R.L. at a Speedway and attempted to speak to Lee, she

7

immediately got into her car and quickly drove away. Popescu's and Miller's testimony similarly demonstrated that Lee had disallowed them to speak with R.R.L. when they interacted at the mall. Other relatives also testified that Lee had denied them contact and ignored their requests to visit or communicate with the child, further corroborating Finney's testimony. Justifiable cause for failure to communicate with a child is established when there is significant interference by the custodian of the child "with communication between the non-custodial parent and the child, or significant discouragement of such communication." *Holcomb* at paragraph three of the syllabus. Here, Lee significantly discouraged communication by preventing any contact or interaction with R.R.L. on multiple occasions, removing R.R.L. from the area when family members tried to interact with him, and threatening to get police involved if visits were attempted.

{¶24} Failure to communicate has been found justified when a parent had reason to believe efforts to communicate with the child would be fruitless. *Adoption of Johnson*, 12th Dist. Clinton No. CA92-11-023, 1993 WL 220240, *3 (June 21, 1993) (where the mother refused or failed to respond to multiple requests for visitation, the court found it was "plausible" that the father "believed it would be futile to attempt communication with his daughter by mail where he anticipated it would be intercepted before she received it"); *also Adoption of C.S.*, 2d Dist. Montgomery Nos. 20557, et al., 2004-Ohio-5933, ¶ 26 (where the father had previously failed to allow the mother contact and the grandmother restricted telephone contact for a period of months, the mother's limited, unsuccessful attempts at contact were justified since "the trial court could have reasonably concluded that [the mother] believed her efforts would have been futile"). Although Finney did not attempt to communicate with R.R.L. or Lee during the one-year lookback period, this was

8

due to Lee's conduct dating back several years which discouraged and prevented future contact. Courts "may examine any preceding events that may have a bearing on the parent's failure to communicate with the child, and the court is not restricted to focusing solely on events occurring during the statutory one-year period." *In re Adoption of I.M.M.*, 5th Dist. Ashland No. 16 COA 018, 2016-Ohio-5891, ¶ 29; *Johnson* at *3.

{¶25} Lee's citation to *In re Adoptions of Doyle*, 11th Dist. Ashtabula Nos. 2003-A-0071 and 2003-A-0072, 2004-Ohio-4197, in support of her argument that Finney could have communicated with R.R.L. is unavailing. In *Doyle*, this court found that incarceration did not prevent communication attempts with the child through methods such as sending letters and cards. Here, the testimony established that Lee prevented communication attempts, which differs from the facts of *Doyle* where there was no such interference.

{¶26} Lee argues that there were conflicts in Finney's testimony regarding the exact attempts to contact her and statements regarding whether he was afraid of the police being called, thus rendering his testimony lacking in credibility. We do not find the court erred in assessing his credibility and determining his testimony was reliable. As to the significant issue here, whether Lee interfered with his ability to have contact with R.R.L., as addressed above, Finney's testimony was consistent with that of several other witnesses. While Lee contends that she was protecting R.R.L. by preventing contact with him, the record does not indicate that Finney posed a threat to R.R.L. such that it was appropriate to deny him all avenues of communication with his son.

{¶27} Finally, Lee argues that Finney could have taken additional steps to foster a relationship with R.R.L., such as initiating court proceedings for visitation. We emphasize, however, that "[t]he central question for the Court is not whether the natural

9

Case No. 2021-T-0047

father could have possibly done more to overcome the interference with visitation and communication, the central question is whether there was significant interference with visitation and communication." (Citation omitted.) *In re Adoption of J.K.C.*, 2017-Ohio-159, 77 N.E.3d 496, ¶ 48 (11th Dist.). "Where a custodial parent's substantial efforts have 'deprived the non-custodial parent of the opportunity of enjoying a meaningful relationship with his [or her] child * * * the law should not further reward [the custodial parent's] discordant efforts by countenancing a termination of the non-custodian's parental rights in a non-consensual adoption proceeding.'" (Citation omitted.) *In re Adoption of A.L.S.*, 2018-Ohio-507, 106 N.E.3d 69, ¶ 23 (12th Dist.). We find the weight of the evidence supported the trial court's finding that the lack of contact was justifiable due to Lee's interference.

{¶28} The first assignment of error is without merit.

{¶29} In her second assignment of error, Lee argues that the trial court erred in determining that Finney paid child support consistent with the law and judicial decree for the preceding year, emphasizing that he paid only a portion of the support owed to her.

{¶30} "The plain text of R.C. 3107.07(A) instructs a trial court to determine whether a natural parent provided maintenance and support 'as required by law or judicial decree' for a period of at least one year immediately preceding the filing of the adoption petition." *In re Adoption of A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629, 150 N.E.3d 82, ¶ 8.

{¶31} As an initial matter, we observe that the lower court's rationale for finding that Finney paid his full support obligation was based on its conclusion that he only owed support in the amount of $42.02 per month, paid to Popescu, and far exceeded the total

10

amount due to overpayment in multiple months. However, this appears inconsistent with the evidence presented regarding the child support obligation. There are three documents in the record relating to the child support obligation. First, the September 28, 2018 judgment entry granting legal custody to Lee states that "any current child support orders are now redirected commencing July 1, 2018 to the current custodian," Lee. No further judicial order or entry is present in the record stating the amount of that obligation. Also present in the record is an April 19, 2021 Trumbull County Child Support Enforcement Agency "Payment History Report" with Finney as the obligor and Popescu as the obligee for the payment period of January 2020 through March 2021. The "monthly total obligation" is stated as $42.02 for each month, with an arrears balance of $6,670.35 as of January 2020. Since each payment made during that year decreased the arrearage amount, it appears the $42.02 was a monthly arrearage payment. Pursuant to this report, the following payments were made in January 2020 through January 2021: April, $9.00; May, $277.02; June, $1,425.47; July, $38.86; August, $24.42; October, $17.46; November, $36.86; December, $32.98; and January 2021, $32.98. Finally, there is a March 4, 2021 computer printout of a "Payment History Report" with Finney as the obligor and Lee as the obligee from the period of April 2019 through March 3, 2021. It does not show a "monthly support obligation" for each month but states at the top "Monthly Support, Child: $206.00, Additional $46.14, Total $252.14." It then lists all payments made to the account. The following payments were made in January 2020 through January 2021: April, $57.00; May, $64.98; June, $641.35; July, $232.31, August, $140.74; October $104.67; November $221.09; December, $197.75; and January 2021, $197.71.

{¶32} There does not appear to be a question that Finney paid more to Popescu

11

Case No. 2021-T-0047

than was required given the apparent $42.02 monthly order, paying $1,895.05 total when $504.24 would be owed. The trial court, however, did not address child support as it relates to Lee except to state that "although the payments [of $42.02] were not received by the Petitioner and were therefore not able to be used to provide for the maintenance and support of the minor, the failure of the funds to be delivered to the correct individual was not the fault of Raymond Finney." Lee's testimony, and the records presented including the judgment transferring the support order, show that Finney had a child support obligation to her as well, and, in fact, made payments to her child support account separate from those to Popescu's. According to the Payment History, $1,857.60 was paid to Lee in the year preceding the filing of the adoption petition. Based on the evidence presented, it is not consistent with the record to find that the only support order owed was the $42.02 monthly order to Popescu. Nonetheless, we do not find that the evidence supports a conclusion that Finney failed to pay support for the purposes of determining consent.

{¶33} Lee argues that, consistent with *A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629, 150 N.E.3d 82, support was to be paid "as required by law or judicial decree" and Finney failed to do so when he did not pay each monthly payment to her in full. *A.C.B.* clearly rejects the argument that the "provision of *any* maintenance and support during the statutory one-year period is sufficient to preserve a natural parent's right to object to the adoption of their child" and emphasizes that the statute provides that support is to be paid "as required by law or judicial decree" for the one year period. *Id.* at ¶ 9-10. It does not, however, preclude a determination that Finney complied with the support obligation pursuant to R.C. 3107.07(A).

12

**{¶34}** We initially emphasize that, as indicated above, there is no judicial decree in the record showing the exact amount of support ordered by the court. While there are testimony and records regarding payment histories, it is difficult to discern if the amount of support changed during the preceding year, particularly with Lee's records since the amount of support owed presumably was the order in place at the time the records were printed and may have changed over time. The burden is on the petitioner to demonstrate by clear and convincing evidence that the parent failed to support the child. *Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph one of the syllabus.

**{¶35}** Nonetheless, even presuming that the obligations owed are the amounts outlined above, Finney paid a total of $3,752.65 in support and/or arrears to Popescu and Lee, which was more than his total obligation of $3,529.92. This would be consistent with the amount of the obligation set forth by law or judicial decree.

**{¶36}** In *A.C.B.*, the court found consent was not required because payment of $200 in the full year support period was not consistent with a judicial decree where $4,420 in support was owed. *Id.* at ¶ 19. In cases applying *A.C.B.*, similar circumstances have existed. *See Matter of L.R.O.*, 2d Dist. Darke Nos. 2019-CA-19 and 2019-CA-20, 2020-Ohio-3200, ¶ 17 (consent was not required when the mother paid less than ten percent of the support obligation). Here, we have a very different set of circumstances, wherein Finney did not pay only a fraction of his support and instead paid an amount consistent with his apparent monthly obligations, although it was not distributed appropriately, was paid inconsistently across several months, and a large portion went to decrease his arrearage. We must emphasize that exceptions to the requirement for consent in adoptions must be strictly construed and that adoption cases "are all fact specific and turn

13

on the particular facts and circumstances in each case." *In re Adoption of Lasky,* 2005-Ohio-1565, at ¶ 17; *In the Matter of the Adoption of Way*, 4th Dist. Washington No. 01CA23, 2002 WL 59629, *6 (Jan. 9, 2002). Under these particular facts, we find that Finney's support payments constituted payment consistent with the law.

{¶37} While recognizing that the payment to Popescu was for arrearages and was not given to Lee to pay for present expenses, it evidences payment of obligations relating to R.R.L. and commitment to his support, which is consistent with the purpose of the statute relating to consent. This is not an instance where Finney shirked his responsibility to pay support. While he did miss some monthly payments during the one-year period, since the total support obligation amount was satisfied, we cannot find this justifies a determination that there was a lack of compliance with the law. This could lead to a result where a parent who missed one monthly payment but paid their total support obligation could lose their parental rights, an outcome which is unreasonable.

{¶38} Further, even taking into consideration that there may not be full compliance with court-ordered support since overpayment was made to Popescu rather than full payment to Lee, this does not change the outcome. As the Ohio Supreme Court emphasized in *A.C.B.*, where there is a failure to comply with the judicial support decree, it must also be established that the failure to provide support was without justifiable cause, which "ordinarily will not be an easy showing to make" given the clear and convincing standard. 159 Ohio St.3d 256, 2020-Ohio-629, 150 N.E.3d 82, at ¶ 17. Here, taking into consideration that the total amount paid by Finney exceeded the aggregate monthly obligations, while it may not have all been paid to Lee, the failure to comply with the order is justifiable as it was more of a technical failure than an intended lack of support. Given

14

the significance of the outcome of losing one's parental rights permanently, a technicality should not be the basis for a finding that consent is not required.

{¶39} The second assignment of error is without merit.

{¶40} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Probate Division, dismissing Lee's petition for adoption is affirmed. Costs to be taxed against appellant.

THOMAS R. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-T-0047