[Cite as *In re I.G.C.*, 2024-Ohio-145.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

IN THE MATTER OF:

I.G.C. AND G.A.D.,
DEPENDENT CHILDREN

**CASE NOS.** 2023-P-0026
2023-P-0027

Civil Appeals from the
Court of Common Pleas,
Juvenile Division

Trial Court Nos. 2020 JCC 00679
2020 JCC 00680

**O P I N I O N**

Decided: January 16, 2024
Judgment: Affirmed

*Katherine E. Rudzik*, 26 Market Street, Suite 904, Youngstown, OH 44503 (For
Appellant).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Julia B. Adkins*, Assistant
Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee).

*Karlek D.D. Jarvis,* 206 South Meridian Street, Suite A, Ravenna, OH 44266 (Guardian
Ad Litem).

ROBERT J. PATTON, J.

{¶1} Appellant, Heather Duche ("Mother"), appeals from the judgment of the

Portage County Court of Common Pleas, Juvenile Division, granting legal custody of her

children, I.G.C. and G.A.D., to Stephanie and Nicholas Dieter. For the following reasons,

we affirm.

{¶2} Mother has four children, two of which are subject to this appeal (I.G.C. and

G.A.D). Christopher Duche is the father of G.A.D., as determined by a paternity test, and

he is currently incarcerated. ("Father of G.A.D.") He has not maintained contact with G.A.D. Though married to Mother at the time of birth, a paternity test determined that Father of G.A.D. is not the biological father of I.G.C. The father of I.G.C. is currently unknown.

{¶3} In late November of 2020, I.G.C. and G.A.D. were left in the care of Mother's friend for the weekend. When the friend could no longer care for the children, he called the Ravenna Police Department. The Police Department was unable to reach Mother. On November 28, 2020, I.G.C. and G.A.D. were removed from Mother's home. At the time of their removal, I.G.C. was 6, and G.A.D. was 5.

{¶4} On November 30, 2020, a complaint was filed alleging the children to be abused, neglected, and dependent. After a hearing conducted on January 12, 2021, the children were adjudicated dependent.

{¶5} After a dispositional hearing on February 9, 2021, a springing order was put into place that required Mother to complete a case plan and allowed her to regain custody of her children after 30 days if she tested negative for drug screens, did not allow her then boyfriend, B.S., to have contact with her children, and no other party filed an objection. During the April 14, 2023, custody hearing, Mother testified that B.S. had abused her children which was the basis of a child endangerment charge Mother was convicted of in another county.

{¶6} On February 25, 2021, Portage County Department of Job and Family Services ("PCDJFS") filed objections to the springing order after Mother tested positive for methamphetamine and the children disclosed to a case worker that B.S. had come

2

into the home at night while the children were present. After a hearing on the objections, PCDJFS was granted temporary custody of the children.

{¶7} Throughout the course of completing her case plan objectives, Mother has consistently attended supervised visitation with her children and attended their extra-curricular activities. Some difficulty has occurred with the children's behavior after visits when Mother has inappropriately told the children that they would return home soon. Karlek Jarvis, the Guardian Ad Litem ("the GAL") appointed to this case said that the children are bonded to Mother, and that she is capable of addressing their individual needs.

{¶8} Mother has not been consistent with meeting her case plan objectives, though she has maintained negative drug screenings for a year. Mother obtained full time employment as an assistant manager at Family Dollar beginning in April of 2022. Mother acquired appropriate housing for her children in February of 2023. Despite this progress, Mother has not consistently engaged in substance abuse counseling and random drug screening as required by her case plan. Though Mother partially complied with her substance abuse services, her engagement with PCDJFS and screenings did not comply with her case plan. In November of 2022, Mother disengaged from all services entirely due to conflicts with her work schedule.

{¶9} Multiple extensions of the temporary custody order were filed, and a permanency plan was put into place in the event that Mother's case objectives were not completed. As part of the permanency plan, Stephanie and Nicholas Dieter were named the potential recipients of legal custody of I.G.C. and G.A.D. Stephanie Dieter ("Ms. Dieter"), is Father of G.A.D.'s stepsister. Ms. Dieter previously contacted PCDJFS and

3

indicated she would like to care for the children. The children were placed with the Dieters in December of 2021.

{¶10} In a custody hearing held on April 14, 2023, Rachel Magrell ("Ms. Magrell"), a case worker for PCDJFS assigned to Mother's case, testified that unification was unlikely at that time. Ms. Magrell also testified that it was her belief that placing I.G.C. and G.A.D. in the legal custody of the Dieters was in the children's best interest. The GAL, also testified at the April 14, 2023 custody hearing. Ms. Jarvis's recommendation states, "[a]t this time it is in the best interest of G.A.D. and I.G.C. to be placed in the legal custody of paternal aunt and uncle, Stephanie and Nick Dieter." In an order filed April 24, 2023, I.G.C. and G.A.D. were placed in the legal custody of the Dieters. Mother now timely appeals that order.

{¶11} Mother asserts one assignment of error: "The Trial Court committed reversible error when it granted legal custody to the kinship placement when Children's Services did not provide reasonable unification efforts."

{¶12} Specifically, Mother asks this Court to address three issues: (1) "Did the trial Court's err in awarding legal custody to the kinship placement?" (2) "Was there a genuine effort at reunification?" and (3) "Was [Mother] in substantial compliance with case plan?"

{¶13} It should be noted that this Court recently reversed the decision of the Portage County Common Pleas Court, Juvenile Division, terminating parental rights for two of Mother's children, not subject to this appeal.[1] However, termination of parental rights and granting of legal custody to a third party are different and have different legal standards.

---

1. *In re G.C.M.G.*, 11th Dist. Portage No. 2023-P-2024, 2023-P-0025, 2023-Ohio-3018.

4

Case Nos. 2023-P-0026 and 2023-P-0027

{¶14} Termination of parental rights requires a finding by the trial court of clear and convincing evidence, while a granting of legal custody to a third party requires a finding by a preponderance of the evidence, that the decision will be in the best interest of the child. *Matter of P.V.A.*, 11th Dist. Ashtabula No. 2022-A-0097, 2023-Ohio-1622, ¶ 13. Though an award of legal custody is intended to be permanent (*see* R.C. 2151.42 (B)), residual rights remain with a loss of custody, where "'[s]evering the parent-child relationship has been described as the family-law equivalent of the "death penalty."'" *Matter of Adoption of R.R.L.,* 11th Dist. Trumbull No. 2021-T-0047, 2022-Ohio-1100, quoting *Matter of Adoption of J.F.R.-W.*, 7th Dist. Belmont No. 16 BE 0045, 2017-Ohio-1265, ¶ 13, citing *In Re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997)" *Matter of Adoption of L.M.C.*, ¶ 17, 11th Dist. Portage No. 2023-P-0029, 2023-Ohio-3119, ¶ 15.

{¶15} A grant of legal custody is reviewed by an appellate court under an abuse of discretion standard.[2] *Matter of P.V.A.*, 11th Dist. Ashtabula No. 2022-A-0097, 2023-Ohio-1622, ¶ 12. "An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' *In re L.L.S.*, 11th Dist. Portage No. 2016-P-0068, 2017-Ohio-7450, ¶ 20, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.)." *Id.*

{¶16} "A trial court must determine the appropriateness of legal custody 'in accordance with the best interest of the child as supported by the evidence presented at

---

2. A case out of the 11th District was recently reviewed by the Supreme Court of Ohio, regarding a conflict among the districts regarding the proper appellate standard of review for termination of parental rights. In *In re Z.C.*, Slip Opinion No. 2023-Ohio-4703, the Court determined that termination of parental rights cases should be reviewed under a sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standard, "depending on the nature of the arguments made by the parties."

Case Nos. 2023-P-0026 and 2023-P-0027

the dispositional hearing.' R.C. 2151.415" *In re S.A.*, 11th Dist. Trumbull Nos. 2011-T-0098, 2011-T-0099, 2011-T-0100, 2012-Ohio-2006, ¶ 25.

{¶17} The applicable standard for granting legal custody is by a preponderance of the evidence that an award of custody is in the best interests of the child. *In re J.F.*, 11th Dist. Trumbull No. 2010-T-0029, 2011-Ohio-3295, ¶ 40.

{¶18} The trial court's paramount consideration in this case was to determine if, by a preponderance of the evidence, not whether Mother was fit to maintain custody, but whether placing I.G.C. and G.A.D. in the legal custody of the Dieters is in the best interest and welfare of the children. *Matter of C.H.*, 11th Dist. Ashtabula No. 2018-A-0061, 2019-Ohio-4316, ¶ 28.

{¶19} The basis of Mother's case plan was to address parenting issues and abandonment issues. The case plan included completing objectives for mental health and substance abuse, passing required drug screenings, acquiring stable housing, obtaining employment that would be sufficient to support herself, and completing a parenting program through an approved licensed agency. Mother's case plan additionally demanded that she follow and complete all recommendations made regarding substance abuse and mental health counseling.

{¶20} Mother did not fully comply with her case plan to remedy the conditions that caused the children's removal from her custody. While there was some compliance, "it is entirely possible that a parent could complete all of [her] case plan goals and the trial court still appropriately grant legal custody to a third party." *Matter of P.V.A.*, 2023-Ohio-1622, ¶ 19, citing *In re Calvert Children*, 9th Dist. Nos. 05-CA-19, 05-CA-20, 2005-Ohio-5653, ¶ 74. "The main issue considered by the courts is "not whether the parent has

6

substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal. *McKenzie* at 4." *In re Calvert Children*, 2005-Ohio-5653, ¶ 74.

{¶21} Mother did obtain employment and stable housing, though only months before the custody hearing. Mother also tested negative to the drug screenings she submitted to for the past year, demonstrating progress towards her case plan objectives. Despite those achievements, part of the requirements of Mother's case plan was to complete the plan and follow the recommendations. Mother was inconsistent with her compliance and missed screenings, did not attend appointments as required, and never attended the required parenting class. Mother also did not consistently engage with PCDJFS. In November of 2022, Mother completely disengaged with services altogether.

{¶22} Mother's case worker, Ms. Magrell, testified at the April 14, 2023 custody hearing that she believed reunification was unlikely, and that it was in the best interest of I.G.C. and G.A.D. to be placed in the legal custody of the Dieters. The appointed GAL recommended the same. Ms. Dieter testified at the custody hearing that she understood that Mother would be entitled to reasonable visitation within her discretion to keep the children safe. Ms. Jarvis testified that when given the opportunity to talk to the children they expressed that they were very happy and comfortable with the Dieters. The Dieter's have enrolled the children in activities like dance and basketball and have two other children in the home that I.G.C. and G.A.C. have bonded with. Mother testified during the same custody hearing that her former boyfriends harmed her children, and Ms. Magrell testified that she had concerns about Mother's history of boyfriends who are abusive to both Mother and her children.

7

**{¶23}** Both the GAL, and Mother's case worker, Ms. Magrell, testified that they believed it to be in the best interests of the children to be placed in the legal custody of the Dieters. Ms. Dieter testified that she understood and agreed to facilitate visitation between Mother and the children if granted legal custody.

**{¶24}** The record demonstrates that Mother has maintained contact with her children and successfully maintained full-time employment for the past year. Mother has obtained stable housing, though for a relatively short period of time, and she has not tested positive for drug screenings in the past year. Nothing in the record indicates that she is still engaging in relationships with abusive partners. However, Mother has not consistently submitted to drug screenings or attended substance abuse and mental health appointments as required by her case plan. Mother has failed to consistently engage with her case workers. Mother has not demonstrated that she has complied with the steps necessary to remedy the conditions that caused her to lose custody of her children in the first place.

**{¶25}** Thus, the trial court did not abuse its discretion in finding by a preponderance of the evidence that it was in the best interest of I.G.C. and G.A.D. to grant legal custody to Stephanie and Nicholas Dieter.

**{¶26}** For the foregoing reasons, we affirm.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

8

Case Nos. 2023-P-0026 and 2023-P-0027